THOS. WARREN, Appellant, v. MAYER FERTILIZER & JUNK COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted November 1, 1909. Opinion Filed November 16, 1909.

1. CORPORATIONS: Transfer of Property in Good Faith: Effect on Creditors. While, as a general rule, the assets of a corporation are a trust fund for the benefit of its creditors, yet a corporation may dispose of the whole or any part of its assets for value and in good faith, and the purchaser takes such assets discharged of any trust in favor of the creditors of the selling corporation.

2. ———: ———: Creditors' Bill: Evidence Reviewed. On a review of the evidence, it is *held* that a corporation transferring its assets to another corporation did so in good faith and for an adequate consideration, and that there was neither fraud in fact, fraudulent intent nor constructive fraud shown, so as to entitle plaintiff, a creditor of the former, to recover in an action against the latter, in the nature of a creditor's bill.

3. ———: ———: ———: Lien of Judgment, Pending Appeal. The fact that the claim of a creditor of a corporation had not been liquidated when the debtor corporation transferred its assets to another corporation would not render the claim the less a lien on the assets in the hands of the other corporation, if they were not transferred in good faith and for an adequate consideration.

4. ———: ———: ———: Equitable Title in Transferee; Legal Title in Debtor. Where a corporation undertook in good faith, and for an adequate consideration, to transfer all its assets to another corporation, but by mistake a city lot belonging to it was omitted from the conveyance of its real property, the equitable title to the lot passed to the transferee, and, in an equitable action by the creditor of the transferrer against the transferee to subject the conveyed assets to satisfaction of the debt, the creditor could not assert a right, based upon the fact that the legal title had not been conveyed.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*George B. Webster* for appellant.

(1) Upon the uncontroverted facts the decree below is erroneous. (a) Whatever may have been the purpose of transaction between the A. B. Mayer Manufacturing Company and the respondent in this case, and whatever the consideration the latter may have paid for the assets of the former, the existence of Warren's claim, unliquidated though it may have been, was known to both before the consummation of the transfer, and the notes and money received by the judgment debtor as part of the consideration were distributed among certain of its stockholders to the exclusion of creditors.

In these circumstances, the right of a creditor to satisfaction out of the assets was not extinguished, but continued to exist, following the assets into the hands of the vendee. Bertholdt v. Holiday-Klotz L. & L. Co., 91 Mo. App. 233; Jones v. Mech. & Ag. Co., 38 Ark. 17; Bank v. Sanitarium, 103 Ala. 358 (15 So. 618); Ins. Co. v. St. L. & N. O. T. Co., 13 Fed. 516; Grenell v. Gas Co., 112 Mich. 70; Capsule Co. v. Isaacs, 23 Ind. App. 533; Ward v. McPherson, 113 S. W. 42; Railroad v. Evans, 66 Fed. 823; Blair v. Railroad, 22 Fed. 36. (b) By the undisputed evidence the title to lot 7 in block 14 of Lowell remained in the judgment debtor until after Warren's judgment was rendered. It was thus subject to the lien, even though the manufacturing company and the junk company both intended to include it in the deed. R. S. 1899, secs. 3713, 3714. (2) The respondent was not a purchaser in good faith for value. It was not a purchaser of any kind. The whole transaction amounted but to the elimination of certain stockholders and a continuance of the business under another name. Baker Furn. Co. v. Hall, 76 Neb. 88; Railroad v. Lee, 27 Ky. 134; Hughes v. School Dist., 72 Mo. 643; Railroad v. Evans, 66 Fed. 810; Bank v. Judah, 8 Conn. 145; Crouse v. Columbia P. Co., 33 Atl. 297; Vance v. McNabb C. Co., 92 Tenn. 47; Sweeny v. Grape Sug. Ref. Co., 30 W. Va. 443; Montgomery W. Co. v. Dienelt, 133 Pa. St. 585.

*Julius T. Muench* for defendant.

Where a corporation, in good faith and for a valuable consideration, makes a transfer of all its assets, a creditor of the transferring corporation has no claim against the transferee or the property transferred. Powell v. Railroad, 42 Mo. 63; Bank v. Iron Co., 97 Mo. 38; Goodfellow v. Prickett, 84 Mo. App. 94; Hageman v. Railroad, 202 Mo. 249; Barrie v. Railroad, 125 Mo. App. 96; Fogg v. Blair, 133 U. S. 534; Noyes on

Intercorporate Relations, p. 191, sec. 123; Barrie v. Railroad, 119 S. W. 1058.

STATEMENT.—In 1895, the appellant, plaintiff below, had a transaction with a corporation known as the A. B. Mayer Manufacturing Company which resulted in the commencement by him of an action against it, in the circuit court of the city of St. Louis, on the 12th of April, 1897. At the first trial of that case, the judgment went for the defendant, being rendered October 21, 1897, but the plaintiff prosecuted an appeal to the Supreme Court, where the judgment was reversed, of date March 12, 1901. The case was again tried in the circuit court and resulted in a judgment of date June 11, 1902, in favor of plaintiff here against the A. B. Mayer Manufacturing Company, for $765 and costs, the costs amounting to $157.55. At the beginning of the litigation against it, the A. B. Mayer Manufacturing Company was conducting an active business and had real and personal property, variously estimated at from sixty to thirty-four thousand dollars. It was capitalized at fifty thousand dollars, divided into five hundred shares of one hundred dollars par, of which Fred. Mayer owned one hundred shares, the estate of A. B. Mayer two hundred shares and the children of another one of the Mayer family, namely, Rosa, Henry and Maurice, the remaining two hundred shares. The officers and directors of the company were Frederick, Henry and Maurice Mayer. After the first trial of the case in the circuit court, in which the A. B. Mayer Manufacturing Company was successful, but subsequent to the appeal of the case to the Supreme Court, and before the reversal of the judgment of the circuit court by the Supreme Court, the A. B. Mayer Manufacturing Company, under date of February 9, 1901, entered into a contract with "Henry Mayer or Maurice Mayer," the contract

being evidenced by the record of the meeting of the directors of the company, held February 9th, at which all the directors were present, namely, Frederick, Henry and Maurice Mayer, in which resolution it is set out, that "Frederick Mayer reported that the condition of the company at present was such that they could not continue in business with any expectation of earning and paying off sufficient to discharge the two larger claims of Rosa Mayer and Abram B. Mayer, appearing on the company's books as debts, although said claims really originated from the declaration of dividends which the company never had the means to pay; that if an option were given to Henry or Maurice Mayer to sell all the assets of this company to a new corporation to be formed, such new corporation would assume all of the secured and merchandise debts of this company, except such claims of Rosa Mayer and A. B. Mayer, deceased, and except outside claims, and would pay or secure to this company the further sum of $12,000, which could then be applied to the past debts of this company." A resolution was thereupon adopted by the board of directors, "to authorize the said Henry or Maurice Mayer to negotiate a sale of all the assets of this corporation upon the terms aforesaid, and that for such purpose they be extended an option to that effect, and that upon said new corporation or said Henry or Maurice Mayer turning over or securing the sum of $12,000 in cash or good notes, and upon their furnishing an agreement of a solvent party or corporation to assume the obligations of this company hereinbefore mentioned, the president and secretary be, and they hereby are, instructed to transfer and convey to said company or corporation all the assets, brands and good will of this company, and that said sum of $12,000 be turned over, as received to the executors of the estate of A. B. Mayer, deceased, on account of his said claim against this company, it being considered that the said claim of Rosa Mayer against the same has

become barred by limitation." Prior to this date, February 9, 1901, that is to say, January 23, 1901, the first meeting of the stockholders of the defendant Mayer Fertilizer & Junk Company was held, all of the stockholders being present, to-wit, Frederick Mayer, Sam. S. Pingree and Harry Haas. Frederick Mayer was elected chairman and Mr. Pingree secretary. It is then recited in the minutes of the meeting, from which minutes the subsequent recitals of acts of the company are obtained, that "negotiations for the purchase of an established business in the city of St. Louis having not yet been sufficiently completed," the meeting adjourned to reconvene February 2d. On February 2d, the adjourned meeting was held, "all the stockholders being present as before," whereupon Mr. Haas offered the following resolution: "Resolved, that whereas negotiations have been opened between our stockholders and parties having an option upon the property of the A. B. Mayer Manufacturing Company, for the purchase of its entire plant and properties upon the assumption of certain merchandise debts owing by said company and of its line of credit in the German-American Bank of this city, as well as a certain amount of cash and notes, that the following offer be made by the stockholders of this company, to-wit." The proposition is to the effect that the new company, defendant in this case, proposes to purchase from those parties all of the real estate of the company situated in St. Louis, "subject to existing company's indebtedness;" also all its machinery, franchises, choses in action, "and all other personal property belonging to said A. B. Mayer Manufacturing Company, in consideration whereof this company shall assume the merchandise indebtedness of said A. B. Mayer Manufacturing Company, as contained upon its books, as well as all commercial paper upon which the same are liable, whether held in bank or by individuals, all of which indebtedness is estimated to be about $24,000, but not including any claims in suit or in controversy,

nor the claims of Rosa Mayer, deceased, or of her children, nor of the A. B. Mayer estate, which several claims are reported as carried on the said books as an indebtedness of the said A. B. Mayer Manufacturing Company, and this company proposes to surrender to said parties of the A. B. Mayer Manufacturing Company the sum of $2958.83, in cash, and the further sum of $9041.17, in the negotiable promissory notes of this company, endorsed by Frederick Mayer and his two brothers, payable in semi-annual installments during a period of seven years from date, with interest at the rate of five per cent per annum from date, also payable semi-annually, divided into 11 sets of 11 notes each, and described as follows:" The resolution then enumerates. the notes and continues: "And that upon the proper transfer duly authorized of said assets, the president of this company, together with the secretary, be authorized to fully complete the terms of the aforesaid proposition." It was further resolved that the president and secretary of the company issue to each of the subscribers to the stock of the company or their assigns, the amount of stock respectively subscribed by them upon their so turning over all of said assets, brands and good will of said A. B. Mayer Manufacturing Company, "which shall be taken as full payment therefor: Provided said stockholders shall pay said cash or perfectly secure the payment of said promissory notes hereinbefore fully described." The meeting then adjourned until the 16th of February, 1901, and on that date, all the stockholders being present, it is recited that the president, Frederick Mayer, reported that the proposition made to the A. B. Mayer Manufacturing Company for their property, etc., had been accepted and that the conveyances of the property were being prepared. On the same day the directors met and organized, Mr. Pingree resigning as director and Mr. Henry Mayer being elected to succeed him, whereupon the board proceeded to the election of officers and Fred.

erick Mayer was elected president and treasurer, Henry Mayer vice-president and Harry Haas secretary. On the 10th of March, 1901, a special meeting of the directors of the defendant company was held, at which Mr. Haas presented his resignation as director and Mr. Maurice Mayer was elected to succeed him as a director and Mr. Henry Mayer elected to succeed him as secretary, and Maurice Mayer was elected vice-president. A resolution was also adopted, to the effect that the president is authorized to execute a deed of trust upon the real estate of the company to secure the German-American Bank in St. Louis or its assigns, the redemption of a loan or loans in the sum of not exceeding $20,000. After all these proceedings had taken place, as before stated, and a deed, etc., had passed between the parties, the judgment of the circuit court in favor of the A. B. Mayer Manufacturing Company was reversed by the Supreme Court and a judgment rendered in favor of this plaintiff, also as before stated. It further appears that having been successful in defeating the claim of plaintiff in the circuit court, that the attorney and directors of the A. B. Mayer Manufacturing Company gave no thought to it as a possible liability. On the 25th of July, 1902, the A. B. Mayer Manufacturing Company filed in the office of the Secretary of State, an affidavit of dissolution and surrendered its charter. It also appears that the deed from the A. B. Mayer Manufacturing Company to the defendant in this case, of date March 1, 1901, omitted the description of a certain parcel of real estate known as lot 7, in block 14, of Lowell, city block 3381, of the city of St. Louis, which the company then owned, and that at the time of the rendition of the judgment in favor of plaintiff and against the A. B. Mayer Manufacturing Company, the legal title to this lot was in the A. B. Mayer Manufacturing Company and so remained until December 24, 1904, when the three Mayers, as the last board of directors of the A. B. Mayer Manufacturing Company,

executed a conveyance of this lot to this defendant which conveyance was duly of record, it being claimed that the omission of this lot from the conveyance of March 1, 1901, was a mere clerical error. It also appears that Henry Haas, one of the original incorporators of the defendant, had paid nothing for his stock, having subscribed for it at the request and for the accommodation of Frederick Mayer and that he had subsequently transferred it to Maurice Mayer, who paid him nothing for it; and Mr. Haas further testified that while he was present at the first and second meetings of the incorporators and directors, he had taken no part in the negotiations for the assets of the old concern. Mr. Pingree also testified that while he had subscribed for sixty shares of the stock of the new company, the present defendant, he had done so at the request of Frederick Mayer, but had paid nothing for it and had subsequently transferred it to one of the Mayers, who had paid him nothing for the transfer; that while he attended two or three meetings of the company and acted as secretary, he had taken no part in the negotiations for the purchase of the assets of the A. B. Mayer Manufacturing Company.

It also appears that the notes which the A. B. Mayer Manufacturing Company had received as part of the consideration from the defendant and which had been executed by the defendant and endorsed by Frederick, Henry and Maurice Mayer, as well as a certain amount of cash, were turned over to the attorney of Mrs. A. B. Mayer and her children, that attorney having been a very active factor in procuring the adjustment of the claim of the executors and estate of A. B. Mayer, deceased, pressing the old company for payment thereof and being an active factor in inducing Frederick Mayer to undertake to pull the matter through so that something could be saved for the widow, Mrs. Mary Mayer and her minor children, the claim of Rosa Mayer having been eliminated as worthless. The stock held

by the A. B. Mayer estate was turned over, in exchange for the notes and some cash, to Mr. Muench, who had represented the old company for many years and afterwards represented Fredereick Mayer in this transaction. It further appears that Frederick Mayer was for many years the active head of the A. B. Mayer Manufacturing Company, owning, however, but one hundred shares of the five hundred shares of that concern, and on the death of his father, A. B. Mayer, the whole management and responsibility for the business had been thrown upon him. His unwillingness to carry on the concern under those circumstances appears to have been a very strong motive leading to the organization of the new company and its purchase of the assets and business of the old company; and it also appears that he went into the matter of taking over the business of the old company only after considerable persuasion.

Among the liabilities of the old company was one to the German-American Bank, secured by a blanket mortgage on all of the assets of the concern, being used as collateral to cover whatever the old concern from time to time owed that bank. At the time of the transfer from one company to the other, the indebtedness to the bank amounted to something like nineteen or twenty thousand dollars, which was the limit of the company's credit with that bank, and the bank had threatened to take steps to protect its interest if the amount of indebtedness was not reduced.

While this is a very brief summary of the facts as set out in a rather voluminous abstract, we think it sufficient to give a correct idea of the facts so far as necessary to an understanding of the issues involved in the case. Plaintiff, after the recovery of his judgment, being unable to find any property upon which to levy execution, and considering that by reason of the dissolution of the old company, he could not run execution against the lot, which had been omitted in the deed from

the old to the new company, commenced this proceeding against the defendant.

The petition in the case set out the facts as plaintiff claimed them to be and substantially as above, and prayed that an accounting be taken of the assets received by the defendant from the A. B. Mayer Manufacturing Company, their value determined, the amount due on the judgment computed to date of decree, and in default of payment the property so received by the respondent, sold for the satisfaction of the amount which might be found to be due on the judgment and for general relief, the petition averring that the transfer from the old to the new company was a mere merger of the business of the one into that of the other, and the transfer of the assets from one to the other made without the defendant company paying any valuable consideration therefor, and averring that the assets and property of the A. B. Mayer Manufacturing Company were, at the time they passed into the hands of the defendant company, a trust fund for the payment of all the debts and liabilities of the A. B. Mayer Manufacturing Company, and when received and taken by defendant, were charged with such liability, and the plaintiff avers, "that defendant has appropriated to its own use said assets and property of the value aforesaid, to-wit, $100,000."

The answer of the defendant admits its incorporation at the time alleged, admits the incorporation of the A. B. Mayer Manufacturing Company and its dissolution under the law, and for affirmative defense avers there is a want of proper parties defendant in the cause, inasmuch as it appears from the allegations of the petition, that there could not be a final decree entered in behalf of plaintiff without joining therein as defendant, "the remaining trustees and directors of the A. B. Mayer Manufacturing Company." As another affirmative defense, the answer avers that, "at the time when the defendant corporation was organ-

ized, to-wit, about the 1st of February, 1901, and at the time when plaintiff had not any claim against the A. B. Mayer Manufacturing Company, but on the contrary the Manufacturing Company had judgment against plaintiff herein," the defendant did, in good faith, and for ample and valuable consideration, acquire by purchase all the assets of A. B. Mayer Manufacturing Company; that the defendant company had acquired by purchase all the assets, real and personal, of the A. B. Mayer Manufacturing Company, and that defendant had immediately rendered the consideration agreed upon and took over and received possession of all the assets, real and personal, theretofore belonging to the A. B. Mayer Manufacturing Company, but that by an error of the scrivener, by whom the deed for the real estate was prepared, the lot in block 3381, of the city of St. Louis, was omitted from the conveyance, although intended to be included therein and although possession thereof was duly delivered to the defendant at the time the consideration passed and on that consideration, and that thereafter in December, 1904, when the error was first discovered the old company made a deed correcting the omission and conveying to defendant the legal title to the lot in addition to the equitable title, which it had theretofore held thereto. The reply to this was a general denial.

The evidence developed the facts substantially as above set out.

At the conclusion of the hearing, the court entered an order dismissing the plaintiff's bill, at the time filing a memorandum, which so clearly and fully sets out the conclusions both on the law and the facts, arrived at by the learned trial judge, that we incorporate them herewith. It is as follows:

"The law governing a case of this character presents no special difficulty. While it is true, in a general way, that the assets of a corporation constitute a trust fund for the benefit of creditors of such corpora-

tion, it is equally true that a corporation has the power to dispose of the whole or any part of its assets for value, and in good faith; and that a purchaser takes such assets discharged of any trust in favor of the creditors of the selling corporation.

"The sole question in this case, therefore, is whether the transaction whereby the defendant acquired the assets of the A. B. Mayer Manufacturing Company was for value and in good faith, or whether, as contended by the plaintiff, the transaction amounted to the mere taking over by one corporation of the assets of another, in bad faith and without consideration and without any provision being made for the payment of the creditors of the latter. This is a question of fact to be determined from the evidence in the case.

"The undisputed evidence shows that the defendant paid in money and in notes to the A. B. Mayer Manufacturing Company the sum of $12,000, and also assumed the payment of all the commercial debts of the latter company, including an indebtedness of something like eighteen thousand to twenty thousand dollars to the German-American Bank. The amount thus paid and assumed aggregated something over thirty-four thousand dollars.

"One of the questions in this case is whether that sum was a fairly adequate price for the assets thus purchased.

"Fortunately for the defendant and those actively interested in its incorporation, they were dealing with adverse and opposing interests in making this purchase. The stockholders and creditors of the A. B. Mayer Manufacturing Company, represented by Mr. Arnstein, were insistent upon obtaining as large a sum as could possibly be realized for the assets of the A. B. Mayer Manufacturing Company, and it is impossible to draw any other conclusion from the evidence but that the aggregate of the sum paid and the debt assumed was as large a price as the A. B. Mayer Manufacturing Com-

pany could then have reasonably expected to obtain for its assets.

"It is true that the opinion evidence offered in the case by the plaintiff tends to show that the value of the assets of the A. B. Mayer Manufacturing Company far exceed that placed upon them in the transaction whereby they were sold to the defendant. The opinion evidence offered by the defendant on the same question reduces the valuation near to that for which they were sold.

"Upon all the evidence offered on that question, especially in view of the difficulties which impeded the continuation of the business of the A. B. Mayer Manufacturing Company, the court is compelled to hold that the transfer was made for an adequate and reasonable consideration.

"There is no  fact upon which to contest the good faith of the transaction except the pending claim of the plaintiff against the A. B. Mayer Manufacturing Company for some $700 or $800. Suit had been commenced upon this claim long prior to the sale, a judgment had been entered in favor of the A. B. Mayer Manufacturing Company and against the plaintiff upon his claim; the case was then pending on appeal in the Supreme Court, and was undetermined. On March 1, 1901, the transaction by which the defendant acquired the assets of the A. B. Mayer Manufacturing Company was fully executed. On March 12th following, the judgment in favor of the A. B. Mayer Manufacturing Company was reversed and remanded for a new trial. This, according to the testimony of Judge Muench, was an unexpected result, and it is obvious from all the testimony in this case that the purchase by the defendant of the assets of the A. B. Mayer Manufacturing Company was not intended to hinder or delay the collection of any claim which the plaintiff might then have had against the A. B. Mayer Manufacturing Company, and that the transaction was wholly in good faith.

"It results, therefore, that the plaintiff's bill must be dismissed.

"In addition to the foregoing observations it is plainly shown by the evidence in this case that the A. B. Mayer Manufacturing Company acquired in this transaction clear assets in money and notes, equal to the sum of twelve thousand dollars, which were subject to the claim of the plaintiff in the hands of that corporation, and were of course amply sufficient to pay any claim that he might establish thereafter against them.

"The fact that the officers and directors of the A. B. Mayer Manufacturing Company distributed those assets after thus acquiring them without making any provision for the payment of the plaintiff's claim affords no reason for holding the defendant liable therefor, but on the contrary conclusively shows that the debtor corporation had sufficient assets with which to pay the claim of plaintiff, and all other claims, for that matter, and it was an easy matter for the plaintiff to have pursued those assets in the hands of the stockholders of the A. B. Mayer Manufacturing Company and to have thus secured payment of his judgment."

REYNOLDS, P. J. (after stating the facts).— The finding of fact and the statement of the law applicable to the case is so thoroughly in harmony with our views, that we do not think it necessary to enlarge upon it. The very learned and industrious counsel for appellant relies very strongly upon the cases of Bertholdt v. Holladay-Klotz Land & Lumber Co., 91 Mo. App. 233; Grenell v. Detroit Gas Co., 112 Mich. 70; Jones v. Arkansas Mech. & Ag. Co., 38 Ark. 17; Arnholt v. Hartwig, 73 Mo. 485; State ex rel. Peirce v. Merritt, 70 Mo. 275, and Chattanooga, R. & C. R. Co. v. Evans, 66 Fed. 809, as well as many other cases in line with these referred to. We cannot agree that the facts in this case come within the principles of those decisions; to the contrary we think that this case falls

within the doctrine laid down by the Supreme Court of the United States in Fogg v. Blair, 133 U. S. 534; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 385, and with the Missouri cases of Hageman v. Railroad, 202 Mo. 249, and cases there cited, as well as the decisions of this court in Barrie v. United Railways, 125 Mo. App. 96, and Barrie v. United Railways, 138 Mo. App. 557, 119 S. W. 1020. We think that the decision of the Supreme Court in the Hageman case governs and controls in the determination and decision of this case, in so far that in many respects it is closely analogous. The new company, defendant here, paid adequate, and the testimony tends to show, full consideration, for the assets which it had received and took over. The purchase price went into the hands of the stockholders of the old company. If there was any fraud upon creditors, it was in the distribution of these assets among the stockholders of the old company. Neither they nor the representatives of the old company are before this court in this proceeding, and as to whether there is any liability under the facts in the case as to them, we express no opinion whatever. So far as the defendant corporation is concerned, on all the facts in the case, and we have read this record with reasonable care, there is neither fraud in fact, fraudulent intent or constructive fraud shown or proven which entitles the plaintiff to recover against it. We are not to be understood as holding that the fact that plaintiff's claim, then pending on appeal in the Supreme Court, was not a lien because unliquidated. On this proposition, we adhere to what we have said in the Holladay-Klotz and Barrie cases, supra. The distinction lies in the fact that in the case at bar there is no evidence whatever tending to show that the transaction here involved was carried out with any intention to defraud any creditors.

As to the proposition made by counsel for appellant in his brief, that this court should at least reverse so far as concerns the lot in city block No. 3381, it is

beyond controversy that the equitable title to that lot passed to the defendant. This is a proceeding in equity and it will not do for plaintiff, coming into a court of equity, to endeavor to assert a bare, naked legal obligation against the equities existing in favor of the defendant. The judgment of the circuit court is affirmed. All concur.