**Thurman BROWN, Appellant,**

v.

**E.W. BLISS CO., E.W. Bliss Co., Inc., and W.H.B. Co., Inc., Appellees.**

No. 86–1761.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1987.

Decided May 26, 1987.

Timothy W. Monsees, Kansas City, Mo., for appellant.

William T. Smith, III, Kansas City, Mo., for appellees.

Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

In this products-liability case, Thurman Brown appeals the summary judgment in favor of defendants and the District Court's [1] refusal to permit him to amend his complaint to add another defendant. We affirm.

I.

In the background of this case is the complex corporate history of defendant E.W. Bliss Co., which we now set out. In 1915 E.W. Bliss Co., which manufactured flange-die machines, built the 250–ton "Bliss press" that allegedly caused the injury for which plaintiff sues. The corporation continued to build presses until 1968, when it merged into another company, Simbartha, Inc. By operation of law, the original Bliss ceased to exist as a corporation after the merger. Simbartha, Inc., which was a wholly-owned subsidiary of Gulf & Western Industries, Inc., changed its name shortly after the merger to E.W. Bliss Co., which we will call "Bliss II." In August 1969, Bliss II sold its entire press-manufacturing business to Bonney Forge & Foundry, Inc., another wholly-owned subsidiary of Gulf & Western Industries. Since that transaction, Bliss II has been an inactive corporation and has had no employees. On November 9, 1983, Bliss II changed its name to EWB Corporation.

By a series of name changes and sales between 1969 and 1975, the press-manufacturing business of the original Bliss was transferred from Bonney Forge & Foundry

1. The Hon. D. Brook Bartlett, United States District Judge for the Western District of Missouri.

to another wholly-owned subsidiary of Gulf & Western Industries, Gulf & Western Manufacturing Co. Gulf & Western Manufacturing conducted the press-making business as an unincorporated division of the corporation called E.W. Bliss Division. This continued until September 13, 1983, when Gulf & Western Manufacturing caused the incorporation of E.W. Bliss Co., Inc., which we will call "Bliss Inc." Between September 13 and November 14, 1983, Gulf & Western Manufacturing sold its press-manufacturing business to Bliss Inc. in return for all of the stock in the new corporation. Gulf & Western Manufacturing remained in business after this transfer, apparently engaged in other, unrelated activity. Finally, on November 14, 1983, Gulf & Western Manufacturing sold all the stock in Bliss Inc. to a completely unrelated company, W.H.B. Co., Inc., for cash. As part of the sale, Gulf & Western Manufacturing agreed to indemnify Bliss Inc. and W.H.B. Co. for all claims caused by "any product manufactured or distributed by the [E.W. Bliss] Division, [Bliss Inc.,] or any predecessor" of either. Supplemental Appendix to Brief of Appellee (S.A.), p. 5.

## II.

Plaintiff claims that he severely injured his left hand in an accident on the premises of his employer, Butler Manufacturing Co. of Kansas City, Missouri, and that the injury was caused by the press made by the original Bliss in 1915. The injury occurred on March 14, 1979. On February 29, 1980, while Gulf & Western Manufacturing operated the business of the original Bliss in its E.W. Bliss Division, plaintiff's counsel wrote a letter to E.W. Bliss Co., at 16600 Sprague Road in Cleveland, Ohio, informing it of the injury and that plaintiff would seek damages against it. S.A. p. 35. In response, Jim Crahan, an insurance agent for Aetna Life & Casualty Co., which insured Gulf & Western Manufacturing, telephoned plaintiff's counsel on March 17, 1980. Settlement negotiations ensued, but they were unsuccessful. Then, on March 14, 1984, the last day of the five-year limitations period, see Mo.Rev.Stat. § 516.120, and after the assets of the E.W. Bliss Division had been sold to Bliss Inc., and the stock of Bliss Inc. had been sold to W.H.B. Co., plaintiff filed this diversity action in the District Court.

The complaint named one defendant, "E.W. Bliss Company, 10633 Worrell Road, Cleveland, Ohio." On March 22, 1984, one Richard Fracker accepted service for Bliss II at 530 South Ellsworth in Salem, Ohio. District Court Original File, No. 84–0334–CV–W–9 (W.D.Mo.), Document 57, filed Jan. 3, 1986. There is no record that Bliss II ever entered an appearance below. Subsequently, on about June 23, 1984, another summons was served, this one on Bliss Inc.

Bliss Inc. answered the complaint and then moved for summary judgment on October 31, 1984 on the ground that it could not be liable to plaintiff because it did not exist on the date of the injury and had not succeeded to the liabilities of the original Bliss. On November 27, 1984, plaintiff moved for leave to amend his complaint to add Bliss Inc., W.H.B. Co., and Gulf & Western Manufacturing as defendants. Only Gulf & Western Manufacturing opposed the amendment, arguing that the statute of limitations had run as to it and that the amended complaint could not, under Fed.R.Civ.P. 15(c), relate back to the date of the original complaint to avoid that bar.

On December 23, 1985, the District Court denied the motion to amend with respect to Gulf & Western Manufacturing, agreeing with it that limitations barred the action. However, the Court granted leave to amend as to Bliss Inc. and W.H.B. Co., and this placed three defendants, Bliss II, Bliss Inc., and W.H.B. Co., in the lawsuit. But on the same day the Court granted the motion of Bliss Inc. for summary judgment, ruling that it could not be liable to plaintiff because it neither existed on the date of the injury nor was a successor to the manufacturer of the allegedly defective press. The order of summary judgment was intended to dispose of the entire lawsuit, but it referred to only one defendant at a time when there were in fact three defendants. The District Court clarified the situation by entering another order on

June 5, 1986, which granted judgment in favor of all three defendants.

### III.

We first consider plaintiff's contention that the District Court erred in denying leave to amend to add Gulf & Western Manufacturing as a defendant. That ruling rested on two grounds: (1) the statute of limitations had expired, and (2) the amended complaint would not relate back so as to avoid the limitations bar. Plaintiff does not dispute the first ground; instead he claims that the Court erred in holding that the amendment would not relate back to the date of the original complaint.

Since the District Court's ruling, two cases have been decided which bear on the relation-back issue in this case. One, *Schiavone v. Fortune,* —— U.S. ——, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), held that under Fed.R.Civ.P. 15(c) the proper defendant must have notice of the lawsuit within the limitations period before an amendment adding him as a defendant will relate back to the original complaint. The other, *Watson v. E.W. Bliss Co.,* 704 S.W.2d 667 (Mo.1986) (en banc), involved some of the defendants sued here and very similar facts, and there the Missouri Supreme Court held that plaintiff's amendment changing the designation of defendant from "E.W. Bliss Company, Gulf & Western Heavy-Duty Division" to "E.W. Bliss Division, Gulf & Western Manufacturing Company" would relate back under Missouri's analogue to Rule 15(c), Mo.R.Civ.P. 55.33(c). Plaintiff argues that *Watson* governs the relationback issue here, while defendants argue that *Schiavone* controls. Thus we must first consider a choice-of-law issue that the District Court had no occasion to address.

To resolve this issue, we look to *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, which provide the analysis for determining rules of decision for federal courts deciding cases governed by state substantive law. One of those cases, *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), sets out the rules for choosing between a Federal Rule of Civil Procedure that covers the issue in dispute, and a conflicting state rule. There the Court stated:

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

380 U.S. at 471, 85 S.Ct. at 1144 (footnote omitted). There is no question that, in the absence of a conflicting state rule, Rule 15(c) would govern the relation-back issue. *Cf. Schiavone,* 106 S.Ct. 2379.[2] Thus, un-

---

**2.** *Schiavone* was a federal diversity case, and the Court applied Rule 15(c) rather than the state relation-back rule, but it did not discuss the choice-of-law issue. This could mean that New Jersey did not have a rule that conflicted with Rule 15(c) in that case, or, if there was such a conflicting rule, that the Court implicitly held that Rule 15(c) must govern. At oral argument before us, defendants claimed that New Jersey does have a relation-back rule that conflicts with Rule 15(c), see *Bradley v. Powles,* 90 N.J.Super. 550, 218 A.2d 647 (App.Div.), *cert. denied,* 47 N.J. 422, 221 A.2d 223 (1966), so that *Schiavone* does indeed stand for the proposition that Rule 15(c) governs. But since the *Schiavone* Court did not expressly address this issue, we conclude that the question, for whatever reason, was not decided in that case. It is highly unlikely that the Supreme Court would have decided so critical an issue *sub silentio.*

We also note that this Court has ruled, in *Crowder v. Gordons Transports, Inc.,* 387 F.2d 413, 416–17 (8th Cir.1967), that Rule 15(c) supplies the rule of decision for relation-back questions in federal diversity cases. However, *Crowder* involved the relation back of an amendment changing the party plaintiff because of a highly technical requirement of a state wrongful-death statute. There, application of the federal rule saved an action that would have been barred by the conflicting state rule, without violating the substantive policies underlying the state rule. Here, by contrast, the federal rule is more restrictive than the state rule. This creates the possibility that applying the federal rule in this case may impair state substantive rights, so we prefer to engage in the *Hanna* analysis anew rather than rely on the authority of *Crowder.*

less applying Rule 15(c) in this case would violate the Rules Enabling Act, 28 U.S.C. § 2072, or the federal Constitution, it must govern here.

The Enabling Act empowers the Supreme Court to prescribe rules of procedure for federal courts, but states that "[s]uch rules shall not abridge, enlarge or modify any substantive right." Plaintiff argues that *Watson* involved a tolling of Missouri's statute of limitations, which is a matter of substantive right, and that any application of Rule 15(c) that conflicts with *Watson* must therefore violate the Enabling Act. We reject this argument. *Watson* held that the plaintiff's amendment correcting a misnomer of the defendant related back to the date of the original complaint. This necessarily means that the statute of limitations had run as to the defendant, for, unless the limitations period has expired, there can be no limitations bar that requires resort to the relation-back doctrine. Thus *Watson* cannot be a case involving tolling of the limitations period. It is only an interpretation of Missouri's rule governing relation back of amended pleadings, which is procedural; therefore applying the contrary *Schiavone* rule will not "abridge, enlarge or modify any substantive right."

■ Nor would the application of Rule 15(c) be unconstitutional here. Congress has the power to promulgate rules governing practice and procedure in the federal courts, and it may exercise that power, as it has, by delegating to the Supreme Court the limited rule-making function granted in the Enabling Act. See *Burlington Northern Railroad Co. v. Woods*, — U.S. —, 107 S.Ct. 967, 969 n. 3, 94 L.Ed.2d 1 (1987). Applying Rule 15(c) here does not exceed that constitutional power, because it does not invade the domain reserved to the states to establish the substantive law governing the conduct of those within their jurisdiction. It "regulates matters which can reasonably be classified as procedural," so it "satisf[ies] the constitutional standard for validity." *Id.* 107 S.Ct. at 971.

■ Therefore the federal rule governs this case. As explained in *Schiavone*, relation back under Rule 15(c) requires, among other things, that the party to be added receive notice of the lawsuit within the limitations period. See 106 S.Ct. at 2384. It is undisputed that Gulf & Western Manufacturing did not receive such notice, so the amended complaint would not have related back, and the District Court was correct to deny leave to amend on the ground that limitations would bar the action against Gulf & Western in any event.[3]

## IV.

Although it refused leave to add Gulf & Western Manufacturing as a defendant, the District Court permitted the amendment as to Bliss Inc. and W.H.B. Co. But these defendants, as well as Bliss II, were granted summary judgment on the ground that they could not be liable to plaintiff as a matter of law. We affirm the judgment for Bliss Inc. and W.H.B. Co. for the reasons given by the District Court; we also affirm as to Bliss II, but on different grounds.

### A.

Bliss Inc. did not exist at the time of plaintiff's injury, so it can be liable to him only if it succeeded to the liabilities of the original Bliss, which manufactured the allegedly defective press. Similarly, W.H.B. Co. neither built the machine nor had any connection with it until after the accident, so it too can be liable only if it succeeded to the liabilities of the original Bliss. The parties agree that Gulf & Western Manu-

---

3. In his affidavits below, plaintiff's counsel claimed that Gulf & Western's insurance agents stated that they represented "E.W. Bliss Co." S.A. pp. 30–33 & 58–59. One of the agents filed an affidavit denying that allegation. S.A. pp. 48–49. The District Court did not consider whether counsel's allegations, if true, would estop Gulf & Western to rely on the statute of limitations or to deny that it could be sued as E.W. Bliss Co. Nor need we consider an estoppel theory either, for plaintiff has not urged that theory as a basis for reversal.

facturing was a successor to the original Bliss and that, at the time of plaintiff's injury, Gulf & Western held all of the assets of the original Bliss in its E.W. Bliss Division. Between September 13, 1983 and November 14, 1983, Gulf & Western sold these assets to Bliss Inc. in return for the latter company's stock. On November 14, 1983, Gulf & Western sold the stock of Bliss Inc. to W.H.B. Co. for cash. The question thus becomes whether these transactions, the sale of assets to Bliss Inc. and the sale of Bliss Inc. stock (which, in the hands of Gulf & Western Manufacturing, was also a corporate asset) to W.H.B. Co., had the effect of transferring the liabilities of the original Bliss from Gulf & Western Manufacturing to either of these defendants.

 Under Missouri law, the nature of the transaction determines whether a corporation that purchases assets from another corporation also acquires liabilities from the seller. *Tucker v. Paxson Machine Co.,* 645 F.2d 620, 622 (8th Cir.1981). When the seller transfers less than all of its assets and continues to exist as a corporation, the purchasing corporation acquires the seller's liabilities only if it agrees to do so[4] or if the transfer is in fraud of the seller's creditors, see, *e.g., Warren v. Mayer Fertilizer & Junk Co.,* 145 Mo.App. 558, 122 S.W. 1087 (1909). It is clear that Gulf & Western Manufacturing transferred less than all of its assets to Bliss Inc. and W.H.B. Co. It is equally clear that neither Bliss Inc. nor W.H.B. Co. agreed to assume liabilities from Gulf & Western; on the contrary, the indemnity agreement between Gulf & Western and W.H.B. Co. demonstrates that Bliss Inc. and W.H.B. Co. struck a bargain *not* to assume any liabilities. Nor is there any suggestion that the transactions were in fraud of Gulf & Western's creditors. Thus it follows that no liabilities passed to

Bliss Inc. and W.H.B. Co., and the District Court was correct to grant them summary judgment.

### B.

In its June 5, 1986 order, the District Court also granted summary judgment to Bliss II, stating, "Plaintiff's claims are against some entity that was responsible for the business of the old E.W. Bliss Company. Neither [Bliss II], [Bliss Inc.,] nor W.H.B. Company, Inc. is that company." Order Clarifying Order of Summary Judgment, No. 84–0334–CV–W–9 (W.D.Mo.), at 2. Thus, summary judgment apparently was granted on the ground that Bliss II is not a successor of the original Bliss. Although we disagree with this conclusion, we hold that judgment was warranted on another ground, so we affirm as to Bliss II.

 Under Missouri law, when two corporations merge, the merged corporation ceases to exist and the other continues as its successor. Mo.Rev.Stat. § 351.450; *Western Auto Supply Co. v. Gamble-Skogmo, Inc.,* 348 F.2d 736, 739 (8th Cir. 1965), *cert. denied,* 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475 (1966); *Dodier Realty & Investment Co. v. St. Louis National Baseball Club,* 361 Mo. 981, 238 S.W.2d 321, 322–25 (1951). Therefore, when the original Bliss merged into Simbartha, Inc., in 1968, Simbartha succeeded to the liabilities of the original Bliss by operation of law. Simbartha then became Bliss II by virtue of a corporate name change, so Bliss II was the successor of the original Bliss. The fact that Bliss II later transferred the assets of the original Bliss did not relieve it of the original Bliss's liabilities. *Cf. Gee v. Tenneco, Inc.,* 615 F.2d 857, 862 (9th Cir. 1980), which was cited by the Court below. Thus it appears that Bliss II was a successor in liability to the original Bliss.

---

**4.** We have not found an unambiguous statement of this rule in the Missouri cases. It is suggested in *Young v. Fulton Iron Works Co.,* 709 S.W.2d 927, 938–39 (Mo.App.1986), but the rationale for the decision is not clear. The District Court, however, held that this rule is part

of the common law of Missouri and, because that was a determination by the District Court of the law of the State in which it sits, and because there is no reported Missouri decision casting doubt on the Court's view, we defer to its judgment.

But even so, the judgment must be affirmed on the authority of *Schiavone*, because plaintiff sued Bliss II in the wrong name. The original complaint, filed on March 14, 1984, named "E.W. Bliss Company" as defendant. But the fact is undisputed that before then, on November 9, 1983, Bliss II changed its name from E.W. Bliss Company to EWB Corporation. S.A. p. 27. Thus Bliss II could not properly be sued as "E.W. Bliss Company" in March 1984. Any amendment of the complaint correcting the denomination of Bliss II now would be barred by limitations; the last day of the statute was the day the complaint was filed. In addition, the amended complaint, if filed, could not relate back to the date of the original complaint because, as plaintiff's own pleading shows, Bliss II did not have notice of the lawsuit until it was served on March 22, 1984, which was after the limitations period had run. See District Court Original File, No. 84–0334–CV–W–9 (W.D.Mo. June 5, 1986), Document 56, filed Jan. 2, 1986, at p. 1, and Document 57, filed Jan. 3, 1986. This issue was raised below, see S.A. p. 27, and, although the District Court passed over it in favor of another ground, it is a sufficient basis on which to affirm the judgment in favor of Bliss II.

Affirmed.