# United States Court of Appeals
## For the First Circuit

No. 08-1195

CARMEN MOREL ET AL.,

Plaintiffs, Appellants,

v.

DAIMLERCHRYSLER AG,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

David C. Indiano, with whom Seth A. Erbe and Indiano & Williams, P.S.C. were on brief, for appellants.
David M. Rice, with whom Troy M. Yoshino, Carroll, Burdick & McDonough LLP, Diego A. Ramos, Roberto Camara Fuertes, José L. Ramírez Coll, and Fiddler, González & Rodriguez, PSC were on brief, for appellee.

May 6, 2009

**SELYA**, **Circuit Judge**.  This appeal turns on a nuanced question that lurks at the intersection of federal and state law: Does an amended complaint that changes the identity of a named defendant after the expiration of the applicable limitations period relate back to the date of the commencement of the action?  The district court, after first concluding that the Puerto Rico relation-back rule controlled the analysis, answered this question in the negative and jettisoned the action.[1]  We hold that the federal relation-back rule applies; that because the conditions to the operation of the federal rule are satisfied, the amendment relates back to the date of the commencement of the action; and that, therefore, the judgment below must be reversed.

## I.  BACKGROUND

The pertinent facts are largely undisputed.  On November 29, 2004, a 1987 Mercedes-Benz 300SDL parked on an inclined street in Puerto Rico began rolling downhill and crushed a six-month-old child, Johnathan Román Morel.  The infant died that evening. Alleging that the death resulted from the vehicle's flawed design, the decedent's family members repaired to court.

---

[1] To be precise, the district court granted partial summary judgment in favor of this defendant.  The order was for partial summary judgment because one of the plaintiffs, Jean Carlos Román, is a minor, as to whom the one-year limitations period has not run. See Cintrón v. Commonwealth, 127 P.R. Dec. 582, 589 (1990).  The district court did, however, certify the partial judgment for immediate appeal under Federal Rule of Civil Procedure 54(b).

Invoking diversity jurisdiction, 28 U.S.C. § 1332(a), the family members (whose names and exact relationships are immaterial here) commenced their action in the United States District Court for the District of Puerto Rico on November 4, 2005. Their complaint alleged a gallimaufry of product liability theories and named as a defendant "Daimler-Chrysler," which the complaint described as "an automobile company incorporated, operated, and with its principal place of business in Michigan . . . ." The plaintiffs served Daimler-Chrysler Corporation (DCC) on December 12, 2005, in Auburn Hills, Michigan.

On February 9, 2006, DCC responded to the complaint by moving for summary judgment on the ground that it had never manufactured or sold Mercedes-Benz vehicles; and that, therefore, the plaintiffs had sued the wrong party. DCC noted that a different entity, Daimler-Benz AG, had manufactured the vehicle described in the complaint and that DaimlerChrysler AG (DCAG), a German company, was the successor in interest to Daimler-Benz AG.[2]

On February 16, 2006, the plaintiffs amended their complaint as of right, see Fed. R. Civ. P. 15(a), substituting DCAG

---

[2] The motion papers explained that, in 1998, a pact between Chrysler Corporation and Daimler-Benz AG had created two legally distinct corporate entities: DCC and DCAG. Under the terms of the agreement, Chrysler Corporation became known as DCC and continued to manufacture Chrysler, Dodge, and Jeep motor vehicles. DCAG (which, in mid-2007, changed its name to Daimler AG) assumed the business formerly conducted by Daimler-Benz AG, including proprietorship of its Mercedes-Benz line.

as the party defendant. DCAG received a copy of the amended complaint on March 6, 2006. The company was formally served under the Hague Convention later that month.

The newly-designated defendant moved for partial summary judgment, see supra note 1, asserting that the adult plaintiffs' claims were time-barred. The plaintiffs countered that, under Rule 15(c) of the Federal Rules of Civil Procedure, the amended complaint related back to the date of the commencement of the action and, thus, their suit was timely.

The district court concluded that a Puerto Rican statute of limitations conferred substantive rights and that Rule 15(c) could not be allowed to trump those rights. Morel v. DaimlerChrysler AG, No. 05-2162, slip op. at 12 (D.P.R. Jan. 10, 2008) (unpublished). Instead, the court applied Puerto Rico's relation-back rule and determined that the amendment did not relate back. Id. at 15 (citing P.R. Laws Ann. tit. 32, App. III, R. 13.3). Accordingly, the court granted DCAG's motion and entered a final (though partial) judgment under Rule 54(b). This appeal ensued.

## II. ANALYSIS

We afford de novo review to a district court's entry of summary judgment. See Dávila v. Corporación de P.R. Para La Diofusión Pública, 498 F.3d 9, 12 (1st Cir. 2007). Because this is a diversity case featuring an array of tort claims rooted in local

law, we look to the law of the forum (here, Puerto Rico) for the applicable statute of limitations. See Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945). Under Puerto Rico law, the limitations period for tort claims is one year. P.R. Laws Ann. tit. 31, § 5298. Since the fatal accident took place on November 29, 2004, the limitations period expired on November 29, 2005.

The plaintiffs sued on November 4, 2005, well within the one-year period. But that complaint did not mention DCAG. They filed their amended complaint — the first pleading targeting DCAG as a defendant — on February 16, 2006. That was after the expiration of the one-year period. Thus, the question reduces to whether the amended complaint relates back to the time of filing the initial complaint.

In the first instance, the answer to this question hinges on whether federal or state law furnishes the controlling relation-back rule. Consequently, we start there.

DCAG maintains that Puerto Rico's statute of limitations is substantive. See, e.g., Rodriquez Narváez v. Nazario, 895 F.2d 38, 43 (1st Cir. 1990). Building on that foundation, it reasons that because an application of a federal relation-back rule would allow the plaintiffs to skirt that temporal bar, Puerto Rico's relation-back rule must control. Its argument boils down to the following construct: if relation back under a federal standard would require a party to defend a claim that would otherwise be

barred by operation of a substantive state rule, then the state rule must take precedence. We do not decide, but accept arguendo, that the claim would otherwise be barred by the Puerto Rico rule (regardless of whether that rule is characterized as substantive or procedural).

This mode of "outcome determination" analysis has some footing in the Supreme Court's diversity jurisprudence. See, e.g., York, 326 U.S. at 109. But "'[o]utcome determination' analysis was never intended to serve as a talisman." Hanna v. Plumer, 380 U.S. 460, 466-67 (1965) (citing Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, 537 (1958)).

In fact, the Supreme Court has held that a federal rule controls notwithstanding that an inconsistent state rule would, if applied, have resulted in a different outcome. Id. at 463-64. Although Chief Justice Warren acknowledged that a federal court "need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts," id. at 473, he made clear that such a Civil Rule ordinarily should take precedence. His opinion stated:

> To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the [Rules] Enabling Act.

<u>Id.</u> at 473-74 (footnote omitted).

<u>Hanna</u> held that the "substance/procedure" dichotomy, derived from the decision in <u>Erie R.R. Co.</u> v. <u>Tompkins</u>, 304 U.S. 64 (1938), and <u>York</u>'s "outcome determination" test do not apply to matters covered by the Federal Rules of Civil Procedure. <u>Hanna</u>, 380 U.S. at 466-73. Rather, as long as a Rule is consonant with both the Constitution and the Rules Enabling Act, 28 U.S.C. § 2072, that Rule must be given effect "regardless of contrary state law." <u>Gasperini</u> v. <u>Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427 n.7 (1996); <u>see</u> <u>also</u> <u>Hoyos</u> v. <u>Telecorp Comm., Inc.</u>, 488 F.3d 1, 5 (1st Cir. 2007).

In the case at hand, Rule 15(c) is squarely on point. For aught that appears, the Rule was properly promulgated and there is no credible basis for impugning its constitutionality. Nevertheless, DCAG asseverates that applying Rule 15(c) in the circumstances of this case would contravene the Rules Enabling Act, which declares in part that a Federal Rule of Civil Procedure "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072. We reject that asseveration.

This language does not preclude the use of Rule 15(c) in the instant case. The test of whether a challenged Rule violates the statutory prohibition turns on the characterization of that Rule; if the Rule relates directly to the practice and procedure of

the district court, it does not violate that section of the statute.  See Hanna, 380 U.S. at 464.

Rule 15(c) is of that genre.  It "is a truly procedural rule because it governs the in-court dispute resolution processes rather than the dispute that brought the parties into court; consequently, it does not transgress the Rules Enabling Act." Johansen v. E.I. Du Pont De Nemours & Co., 810 F.2d 1377, 1380 (5th Cir. 1987); accord Brown v. E.W. Bliss Co., 818 F.2d 1405, 1409 (8th Cir. 1987); Santana v. Holiday Inns, Inc., 686 F.2d 736, 740 (9th Cir. 1982).  Indeed, "no federal court has suggested that [Rule 15(c)] . . . is beyond the scope of the Rules Enabling Act." 6A Wright, Miller & Kane, Federal Practice & Procedure § 1503, at 171 (2d ed. 1990).  The commentators' statement, published in 1990, remains true today.  We decline DCAG's invitation to break ranks and disregard Rule 15(c)'s quintessentially procedural nature.

Sound policy considerations support this point of view. The federal policy behind the Rules Enabling Act aspires to the creation of a system of procedure in the federal courts that is uniform, comprehensive, and rational.  The desirability of such a system substantially outweighs any countervailing state interest that might be served by ceding absolute priority to a conflicting state rule.  While application of a federal relation-back rule may interfere with the operation of state rules at the margins, "[a]pplication of state rules as to relation back would disrupt

important federal policies favoring simplification and uniformity of pleading, and liberality of amendment." <u>Welch</u> v. <u>La. Power & Light Co.</u>, 466 F.2d 1344, 1346 (5th Cir. 1972).

Moreover, even though Rule 15(c) is "intimately connected with the policy of the statute of limitations," Fed. R. Civ. P. 15(c) advisory committee notes (1966 Amendment), the Rule does not actually alter state limitations periods. Under Rule 15(c), the original complaint still must be filed within that state-supplied limitations period. So viewed, "[t]he state's underlying interest . . . in protecting persons against stale claims is adequately protected by the practical notice requirements built into Rule 15(c)." <u>Davis</u> v. <u>Piper Aircraft Corp.</u>, 615 F.2d 606, 612 (4th Cir. 1980); <u>see</u> 19 Wright et al., <u>supra</u> § 4509, at 273-75.

The conclusion that Rule 15(c) applies in a diversity case notwithstanding the incidence of a more restrictive state rule is implicit in our own precedent. <u>See</u> <u>Leonard</u> v. <u>Parry</u>, 219 F.3d 25, 28 (1st Cir. 2000); <u>Freund</u> v. <u>Fleetwood Enters., Inc.</u>, 956 F.2d 354, 362 (1st Cir. 1992) (Breyer, C.J.). What is implied in these decisions is explicit in the holdings of many other courts of appeals. <u>See</u>, <u>e.g.</u>, <u>Simmons</u> v. <u>S. Cent. Skyworker's, Inc.</u>, 936 F.2d 268, 270 (6th Cir. 1991); <u>Johansen</u>, 810 F.2d at 1380; <u>Santana</u>, 686 F.2d at 740; <u>Davis</u>, 615 F.2d at 611-12; <u>Ingram</u> v. <u>Kumar</u>, 585 F.2d 566, 570 n.5 (2d Cir. 1978); <u>Loudenslager</u> v. <u>Teeple</u>, 466 F.2d 249, 250 (3d Cir. 1972); <u>Crowder</u> v. <u>Gordons Transps., Inc.</u>, 387

F.2d 413, 416-17 (8th Cir. 1967). We join the ranks of those courts.

One other matter requires our attention. In support of its position that state law controls, DCAG cites Marshall v. Mulrenin, 508 F.2d 39 (1st Cir. 1974). There, we stated that Rule 15(c) "is not to be applied to the extent, if any, that it would defeat rights arising from state substantive law as distinguished from state procedure." Id. at 44. But context is important; in Marshall, the situation was the obverse of the situation here (that is, the state rule was more generous than the federal rule). Id. at 41. In that circumstance, we applied the less restrictive state rule. Id. at 44-45. Thus, Marshall can be squared with Hanna because "state and federal law do not directly conflict when state law is less restrictive and adhering to state law may be consistent with the general purposes of Rule 15." 6A Wright et al., supra § 1503, at 175.

At any rate, any questions either about this distinction or about the correctness of the Marshall decision have been rendered moot by a 1991 amendment to Rule 15, which explicitly dictates relation back if "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). This subsection was designed to "make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed. R. Civ. P.

15 advisory committee notes (1991 Amendment). The provision cements in place a one-way ratchet; less restrictive state relation-back rules will displace federal relation-back rules, but more restrictive state relation-back rules will not.

To say more on this point would be supererogatory. For these reasons, we hold that federal relation-back rules apply here. Still, that determination does not end our inquiry. The question remains whether these rules allow relation back of the plaintiffs' amended complaint.

Rule 15(c)(1)(C) limns three conditions,[3] each of which must be satisfied in order to permit relation back of an amended complaint seeking to substitute a newly-designated defendant. See Leonard, 219 F.3d at 28. First, the claim asserted against the newly-designated defendant must satisfy the terms of Rule 15(c)(1)(B), which provides that the claim must arise "out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Second, "within the period provided by [Federal Rule of Civil Procedure] 4(m) for serving the summons and complaint, the party to be brought in by amendment" must have "received such notice of the action that it will not be

---

[3] Although Rule 15(c) was amended in 2007, the changes were "intended to be stylistic only." Fed. R. Civ. P. 15 advisory committee notes (2007 Amendment). The various sub-parts of the Rule were rearranged and renumbered but for present purposes the Rule's substance and operation are unchanged. For ease in exposition, we therefore refer to the present, revised version.

prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). Third, it must appear that within the same time frame the newly-designated defendant either "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

The first of these conditions is clearly satisfied here. The claim asserted against DCAG unarguably arises out of the occurrence described in the original complaint.

The second condition involves notice. That notice need not be manifested by formal service of process within the prescribed period. Rather, notice must simply be such that the defendant "will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). At a minimum, though, notice requires knowledge of the filing of suit, not simply knowledge of the incident giving rise to the cause of action. Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 195 (3d Cir. 2001).

The notice that was communicated here plainly satisfied these criteria. DCAG received a letter, attaching a copy of the amended complaint, on March 6, 2006. That transmittal informed it not only of the nature of the claims but also of the pendency of the suit. The only nagging question is whether the notice was timely under the terms of Rule 15(c)(1)(C), which requires that the

-12-

defendant receive notice within the time allotted for service of process under Rule 4(m).

The plaintiffs argue that the 120-day time limit prescribed in Rule 4(m) does not apply in this case because Rule 4(m) does not pertain to service of process in a foreign country; instead, Rule 4(f) — which specifies no particular time limit — applies. Regardless of what uncertainty surrounds the amount of time afforded for service of a foreign corporation in such circumstances, it is logical that Rule 15(c)(1)(C) would afford no less time for the giving of notice in cases involving foreign corporations than it would in the ordinary case to which Rule 4(m) applies. And here, DCAG received notice within the 120-day period.

To recapitulate briefly, the chronology is as follows. The plaintiffs commenced the action on November 4, 2005. Because the day of filing is excluded from the ensuing computation of time, see Fed. R. Civ. P. 6(a)(1), the 120-day period began to run on November 5, 2005. Measured from that date, the one-hundred-twentieth day was Saturday, March 4, 2006. Both that day and the next (Sunday, March 5) were excluded from the computation. See Fed. R. Civ. P. 6(a)(3). Thus, the last day of the 120-day period was Monday, March 6 — the day on which the aforementioned transmittal arrived. This time line shows beyond hope of contradiction that DCAG received notice of the action within the allotted period.

This brings us to the third condition: knowledge of a mistake in identity.  To satisfy this condition, the plaintiffs must show both that they made a mistake about the actual identity of the proper defendant and that, within the prescribed time, that party knew or should have known that, but for the mistake, it would have been sued.  See Leonard, 219 F.3d at 28.

It is obvious from the face of the original complaint that the plaintiffs intended to sue the manufacturer of the allegedly defective automobile.  For aught that appears, they made a mistake concerning the manufacturer's identity.  See generally Webster's Third New Int'l Dict. 1446 (1993) (defining "mistake" as "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention").  But for this bevue, they would have sued DCAG, not DCC.  Thus, when DCAG (which knew full well of its legal responsibility for the manufacture of the vehicle) received notice of the action, it must have known (or, at least, should have known) that the action would have been brought against it in the first place but for the plaintiffs' mistake.  Consequently, the final condition precedent to the operation of Rule 15(c) was satisfied.

DCAG attempts to parry this thrust by suggesting that the plaintiffs might intentionally have "sued 'Daimler-Chrysler' by an ambiguous name and served the complaint in Michigan in the hopes that [DCAG] would respond and thereby obviate the need for the

-14-

costly and often time-consuming requirements of Hague Convention service." Appellee's Br. at 32. We find this suggestion fanciful.

The summary judgment record contains nothing that would support this suggestion (indeed, there is no indication that DCAG made this argument below). What we do find — for example, the assertion by plaintiffs' counsel that "Daimler-Chrysler" was named because the corporate website did not distinguish between DCC and DCAG — points in the opposite direction.

Litigation should not be reduced to a game of cat and mouse. In the last analysis, it seems highly improbable that, with the limitations period about to expire, the plaintiffs, represented by seasoned counsel, would have made such a risky strategic choice. On this record, the only reasonable inference is that a mistake was made.[4]

## III. CONCLUSION

We need go no further. In this instance, Rule 15(c) controls. Because the plaintiffs have satisfied all the conditions for the application of that Rule, their amended complaint designating DCAG as a party defendant relates back to the date of the commencement of the action.[5] It follows inexorably, as night

_____

[4] This inference is reinforced by the fact that, once the plaintiffs learned of their error, they had no difficulty in serving DCAG under the Hague Convention.

[5] The plaintiffs have argued in the alternative that the belated identification of DCAG can be justified as the correction of a misnomer. See, e.g., United States v. Davis, 261 F.3d 1, 33

follows day, that the action against DCAG was timely and that the district court erred in granting partial summary judgment.

**Reversed**.

<hr>

n.25 (1st Cir. 2001).  We do not reach that argument.

-16-