# United States Court of Appeals
## For the First Circuit

No. 09-2324

PAT GODIN,

Plaintiff, Appellee,

v.

PATTY SCHENCKS, JOLEEN NICELY, and DONNA METTA,

Defendants, Appellants,

SCHOOL UNION #134 and MACHIASPORT SCHOOL DEPARTMENT BOARD OF DIRECTORS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

John B. Lucy, with whom Richardson Whitman Large & Badger was on brief, for appellant Joleen Nicely.
John M. R. Paterson, Eben Albert-Knopp, and Bernstein Shur on brief for appellant Patty Schencks.
David A. Strock and Fisher & Phillips, LLP on brief for appellant Donna Metta.
Sandra Hylander Collier for appellee.

December 22, 2010

**LYNCH**, **Chief Judge**.  Pat Godin, the former principal of the Fort O'Brien Elementary School in Machiasport, Maine, brought suit against the Machiasport School Department Board of Directors ("Machiasport") and School Union No. 134 in March 2009, alleging a violation of her due process rights under 42 U.S.C. § 1983.  She also sued three individual school system employees who had separately stated in meetings with officials their views that Godin had acted abusively toward students at the school.  Plaintiff brought state-law claims that these allegations were defamatory and led the school system to terminate her employment; the school system says her job was terminated due to budgetary shortfalls.

Many states have enacted special statutory protections for individuals, like the individual school system employees in this case, named as defendants as a result of the exercise of their constitutional rights to petition the government.  These anti-"SLAPP" ("strategic litigation against public participation") laws provide such defendants with procedural and substantive defenses meant to prevent meritless suits from imposing significant litigation costs and chilling protected speech.  The two federal appellate courts that have addressed whether they must enforce these state anti-SLAPP statutes in federal proceedings have concluded that they must.  See Henry v. Lake Charles Am. Press, LLC, 566 F.3d 164 (5th Cir. 2009); United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963 (9th Cir. 1999). See

-2-

also Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 845-47 (9th Cir. 2001) (limiting application of one anti-SLAPP provision where information was within exclusive control of the defendant). This question, here as it applies to Maine's anti-SLAPP statute, is one of first impression for this court, and lies at the center of this appeal. We hold the Maine anti-SLAPP statute must be applied.

## I.

Basic background facts set the stage. Shortly after Godin began working as a teacher and principal at the Fort O'Brien Elementary School in August 2006, Machiasport began receiving complaints from other employees concerning her conduct toward students, including complaints from the three individual defendants, Patty Schencks, Joleen Nicely, and Donna Metta.[1] Machiasport conducted an investigation of Godin's conduct in May 2008. The June 4, 2008 investigation report concluded that the allegations that Godin's conduct was abusive and inappropriate were not supported.

Two days after the report was issued, Godin received notice from the Superintendent of Machiasport Schools that her

---

[1] Nicely offered statements to both the Superintendent of Schools and the School Board that she felt Godin's treatment of an eight-year-old child, which Nicely observed first hand, was "inappropriate and abusive." Schencks reported to Maine's Department of Health and Human Services and the Maine State Police her observation of Godin's December 2007 treatment of a four-year-old child. Metta informed the Machiasport School Board that, on two occasions in January 2007, she observed Godin treat a student in a manner that in her view was abusive.

employment contract, which would have expired in 2011, was being terminated due to budgetary constraints caused by "significant subsidy loss." Godin was told that her position would be filled by a "teaching principal," which occurred on August 12, 2008.

On March 2, 2009, Godin brought suit in federal court, asserting a federal claim under 42 U.S.C. § 1983 against the Union and Machiasport, and a number of state claims, including claims against the individual defendants for interference with advantageous contractual relationships and defamation.[2]

The individual defendants filed a special motion to dismiss under Maine's anti-SLAPP statute, which creates a special process by which a defendant may move to dismiss any claim that arises from the defendant's exercise of the right of petition under either the United States Constitution or the Constitution of Maine.[3] Me. Rev. Stat. tit. 14, § 556 ("Section 556"). Godin does not dispute that her claims against the individual defendants are

---

[2] Godin's other state claims include a breach of contract claim against the Union and Machiasport and a claim for punitive damages against all defendants.

[3] The federal Constitution provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.
The Maine Constitution provides: "The people have a right at all times in an orderly and peaceable manner to assemble to consult upon the common good, to give instructions to their representatives, and to request, of either department of the government by petition or remonstrance, redress of their wrongs and grievances." Me. Const. art. 1, § 15.

based on conduct that falls within the statute's broad definition of "a party's exercise of its right of petition." Me. Rev. Stat. tit. 14, § 556.

The statute provides that once a defendant brings such a "special motion to dismiss" and demonstrates that the claims in question are based on the defendant's petitioning activity, the court "shall advance [the motion] so that it may be heard and determined with as little delay as possible." Id. The court shall grant the special motion "unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." Id. In assessing whether to grant the special motion, "the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Id. A court may order discovery specific to the Section 556 motion for good cause shown. Id. Evidence considered in reviewing a special motion to dismiss should be viewed "in the light most favorable to the moving party because the responding party bears the burden of proof when the statute applies." Morse Bros., Inc. v. Webster, 772 A.2d 842, 849 (Me. 2001).

The district court denied the individual defendants' special motion under Section 556, holding that Section 556

-5-

conflicts with Fed. R. Civ. P. 12 and 56 and so does not apply in federal court.

This interlocutory appeal raises issues of first impression within this circuit, namely: (1) whether, under the collateral order doctrine, this court has appellate jurisdiction over an interlocutory appeal from an order denying a special motion to dismiss brought under Section 556 on the basis that Section 556 cannot be reconciled with federal procedure; and (2) whether Section 556 applies in federal court proceedings. We hold on the facts here that we have appellate jurisdiction and that the district court erred in not applying Maine's anti-SLAPP statute, Me. Rev. Stat. tit. 14, § 556. We reverse and remand for further proceedings, including proceedings under Section 556.

II.

We address two preliminary jurisdictional issues: (1) whether federal subject-matter jurisdiction exists over the state-law claims against the non-diverse individual defendants even though no federal claim has been brought against them, and (2) whether this court has appellate jurisdiction over the individual defendants' interlocutory appeal by virtue of the collateral order doctrine.

A.     <u>Federal Subject-Matter Jurisdiction: The Supplemental Jurisdiction Doctrine</u>

Although the parties have not questioned subject-matter jurisdiction over the claims at issue, "a court has an obligation

to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988).

In her complaint, Godin asserts federal question jurisdiction pursuant to 28 U.S.C. § 1343 et seq. as to the claims against the school system, and that there exists a common nucleus of operative facts between the state claims and her federal claims sufficient to establish supplemental jurisdiction under 28 U.S.C. § 1367.

With certain exceptions not applicable here, a federal court may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [a court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[4] 28 U.S.C. § 1367(a). While it might be questioned whether Godin's state-law claims that her job termination was caused by defamatory comments from the individual defendants arise out of the same

--------

[4] Section 1367(a) further provides that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). That § 1367(a) confers on federal courts jurisdiction over state-law claims against non-diverse parties--often termed "pendent party jurisdiction"--is particularly clear in light of that statute's origins. See 13D Wright & Miller, Federal Practice and Procedure § 3567, at 320-23 (3d ed. 2008) (describing § 1367's enactment as directly responsive to the Supreme Court's holding in Finley v. United States, 490 U.S. 545 (1989), that the Federal Tort Claims Act does not allow for the assertion of pendent jurisdiction over additional parties).

transaction as her federal claim that the schools did not afford due process in reaching the termination decision, that is not the test.  See Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 88 (1st Cir. 2010) ("No Supreme Court case had ever established the same transaction-or-occurrence test as the boundary of Article III case-or-controversy requirement." (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966))).  We conclude it would not offend the Constitution to assert supplemental jurisdiction over Godin's state-law claims.[5]  Accordingly, supplemental jurisdiction exists over Godin's state-law claims under § 1367(a).

B.      Appellate   Jurisdiction:   The   Collateral   Order Doctrine

Godin objects that we lack appellate jurisdiction, arguing that the order denying application of Section 556 does not meet the requirements of the collateral order doctrine.  "The burden of establishing jurisdiction rests with the party who asserts its existence," here the three individual defendants. Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005).

---

[5]      Because the issue is one of whether there is subject-matter jurisdiction based on the pleadings, we reach this conclusion having accepted as true the well-pleaded facts of Godin's complaint and assessed them in the light most favorable to her theory of liability.  See United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 20 (1st Cir. 2009).

The collateral order doctrine "allows courts to hear appeals from judgments that are not complete and final if they 'fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 123 n.13 (1st Cir. 2003) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). For the collateral order doctrine to apply, the interlocutory order must present: (1) a conclusive decision, (2) distinct from the merits of the action, (3) on an important issue, (4) which would effectively be unreviewable on appeal from a final judgment. Awuah v. Coverall N. Am. Inc., 585 F.3d 479, 480 (1st Cir. 2009); see also Will v. Hallock, 546 U.S. 345, 349 (2006).

Three federal circuit decisions hold there is appellate jurisdiction over an order denying an anti-SLAPP motion to dismiss, Hilton v. Hallmark Cards, 580 F.3d 874, 880 (9th Cir. 2009), Henry, 566 F.3d at 181, and Batzel v. Smith, 333 F.3d 1018, 1024-26 (9th Cir. 2003), while one, also from the Ninth Circuit, holds to the contrary, see Englert v. MacDonnell, 551 F.3d 1099 (9th Cir. 2009).

The issue here is narrower and concerned only with the immediate appealability of an order that a state anti-SLAPP statute does not apply at all to federal court proceedings due to Federal

Rules 12 and 56. We defer to another day resolution of the question of whether an order addressed to the merits of a ruling under an anti-SLAPP statute is immediately appealable.

We have appellate jurisdiction. First, the order conclusively decides that relief under Maine's Section 556 is unavailable to the individual defendants. The relevant inquiry for collateral order doctrine purposes is whether the order is conclusive as to "the disputed question," not the action as a whole. Will, 546 U.S. at 349 (quoting Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)).

Second, the issue of whether a defendant can utilize Section 556 in federal court is distinct from the merits of Godin's action. The legal issue before us is not so intertwined with factual issues as to make it "highly unlikely to affect, or even be consequential to, anyone aside from the parties." Lee-Barnes v. Puerto Ven Quarry Corp., 513 F.3d 20, 26 (1st Cir. 2008).

Third, this appeal raises an important issue of law because the issue raised is "weightier than the societal interests advanced by the ordinary operation of final judgment principles."[6] Id. (quoting Gill v. Gulfstream Park Racing Ass'n Inc., 399 F.3d 391, 399 (1st Cir. 2005)) (internal quotation marks omitted). The seminal Supreme Court case of Cohen v. Beneficial Industrial Loan

_____

[6] Because of the important public interests at stake, Will v. Hallock, 546 U.S. 345, 353 (2006), contrary to Godin's arguments, reinforces our conclusion.

-10-

Corp. itself involved an interlocutory appeal from a district court's determination that a state statute was not applicable to a state-law claim brought in federal court.[7]  337 U.S. at 546.  The Cohen court permitted interlocutory review, and in so doing, carved out the collateral order doctrine.  Likewise, the parallel question of whether this state anti-SLAPP statute applies to a state-law claim brought in federal court qualifies as "too important to be denied review."  Id.

Finally, the order appealed from would be effectively unreviewable on appeal from a final judgment.  It is relevant, but not conclusive, that the Maine Supreme Court's interpretation of Section 556 has led it to permit interlocutory appeals of orders denying special motions to dismiss in its own courts, because "a failure to grant review of these decisions at this stage would impose additional litigation costs on defendants, the very harm the statute seeks to avoid, and would result in a loss of defendants' substantial rights."  Schelling v. Lindell, 942 A.2d 1226, 1229-30 (Me. 2008); see also Maietta Const., Inc. v. Wainwright, 847 A.2d 1169, 1173 (Me. 2004) (discussing purpose of Section 556).

---

[7]    The New Jersey statute at issue in Cohen made the plaintiff in a stockholder's derivative action "liable for all expenses, including attorney's fees, of the defense" and required "security for their payment as a condition of prosecuting the action."  Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 543 (1949).

That is relevant not because state law determines the availability of appellate review here--it does not--but rather because "lawmakers wanted to protect speakers from the trial itself rather than merely from liability." Batzel, 333 F.3d at 1025; see also Englert, 551 F.3d at 1107 (whether state anti-SLAPP statute provides for interlocutory appeals is significant to whether interlocutory appeals should be permitted in federal courts).[8] There is a "crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges." Midland Asphalt Corp. v. United States, 489 U.S. 794, 801 (1989) (quoting United States v. Hollywood Motor Car Co., 458 U.S. 263, 269 (1982) (internal quotation marks omitted)). We conclude that the order at issue here involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, 499 (1989) (quoting Midland Asphalt Corp., 489 U.S. at 799) (quotation mark omitted).

---

[8]    Godin's reliance on Englert is thus misplaced. There, in dismissing the defendants' consolidated interlocutory appeals on the basis that an order denying an anti-SLAPP motion could be effectively reviewed after final judgment, the Ninth Circuit found it important that Oregon's anti-SLAPP statute did not itself make interlocutory appeals available in state-court proceedings. Englert v. MacDonnell, 551 F.3d 1099, 1106-07 (9th Cir. 2009). Englert, with its heavy reliance on the view of Oregon law regarding the availability of interlocutory appeals, cuts against Godin's position given the availability of such appeals in this context under Maine law.

-12-

III.

The district court's order rests on a determination of law, which we review de novo. See Levin v. Dalva Bros. Inc., 459 F.3d 68, 73 (1st Cir. 2006). It is often said that a federal court sitting in diversity jurisdiction[9] applies the state's substantive law and the federal procedural rules. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415 (1996); Erie R. Co. v. Thompson, 304 U.S. 64 (1938); Hoyos v. Telecorp. Comm., Inc., 488 F.3d 1, 5 (1st Cir. 2007); Servicios Comerciales Andinos, S.A. v. General Elec. Del Caribe, Inc., 145 F.3d 463, 478 (1st Cir. 1998).[10] At the same time, there is what we have called "an enduring conundrum--the line between substance and procedure." United States v. Poland, 562 F.3d 35, 40 (1st Cir. 2009). What are matters of substance and what are matters of procedure is difficult to distinguish, and the two are not mutually exclusive categories. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1450 (2010) (Stevens, J., concurring).

---

[9] Our analysis regarding this pendent state-law claim proceeds as it would were this a state-law claim brought in federal court by virtue of diversity jurisdiction. See Doty v. Sewall, 908 F.2d 1053, 1063 (1st Cir. 1990).

[10] We have held that a nominally procedural state rule authorizing an award of attorney's fees as a sanction for obstinate litigation is substantive for purposes of Erie analysis. Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc., 145 F.3d 463, 478 (1st Cir. 1998). State conflict of laws rules are also considered substantive. Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975).

Here, the issue falls into the special category concerning the relationship between the Federal Rules of Civil Procedure and a state statute that governs both procedure and substance in the state courts. The issue is whether Federal Rules of Civil Procedure 12(b)(6) and 56 preclude application of Section 556 in federal court. This is not the classic Erie question. Compare Erie R. Co., 304 U.S. 64, with Hanna v. Plumer, 380 U.S. 460 (1965).

Until the last several decades, federal courts addressing similar issues posed the relevant question, as articulated in Walker v. Armco Steel Corp., 446 U.S. 740 (1980), as whether there was a "direct conflict" between a state law and a federal rule of civil procedure. Id. at 752. That is no longer the initial question. See Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 26 & n.4 (1988).[11] In getting at the potential rub in the relationship between a Federal Rule of Procedure and the state law, courts now ask if the federal rule is "sufficiently broad to control the issue before the court." Shady Grove, 130 S. Ct. at 1451 (Stevens, J., concurring) (quoting Walker, 446 U.S. at 749-50). If so, then the

_____

[11] This shift was described in our opinion in Gil de Rebollo v. Miami Heat Ass'ns, Inc., 137 F.3d 56, 65 n.5 (1st Cir. 1998). One concern motivating the shift was the fact that it "would make no sense for the supremacy of federal law to wane precisely because there is no state law directly on point." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 26 n.4 (1988). Another concern may well be that the supremacy of the Federal Rules should not depend only on whether there is a direct conflict.

-14-

federal rule must be given effect despite the existence of competing state law so long as the rule complies with the Rules Enabling Act, 28 U.S.C. § 2072.[12]  Id.

We conclude that neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. Civ. P. 56, on a straightforward reading of its language, was meant to control the particular issues under Section 556 before the district court.  Given this result we do not reach the next level question as to whether Rules 12(b)(6) and 56 comply with the Rules Enabling Act.

Our conclusion that Rules 12 (particularly Rule 12(b)(6)) and 56 do not control Section 556 proceedings does not end the analysis.  If a federal rule is not so broad as to control the issues raised, a federal court might nonetheless decline to apply state law if so declining would better advance the dual aims of Erie: "discouragement of forum-shopping and avoidance of inequitable administration of the laws."  Hanna, 380 U.S. at 468; see also Shady Grove, 130 S. Ct. at 1437; Walker, 446 U.S. at 752-53.  As to this prong of the analysis, we hold that the dual purposes of Erie are best served by enforcement of Section 556 in federal court.

---

[12]    The caveat exists because "[t]he [Federal] Civil Rules cannot roam at will."  McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 21 (1st Cir. 1991).  They must relate to practice or procedure, 28 U.S.C. § 2072(a), and may not "abridge, enlarge, or modify any substantive right," 28 U.S.C. § 2072(b).

-15-

A.      Federal Rules of Civil Procedure 12 and 56 are not Sufficiently Broad to Control Section 556 Proceedings

The test of whether a federal rule is "sufficiently broad to control the issue before the court," Walker, 446 U.S. at 749-50, was most recently examined by the Supreme Court in Shady Grove, 130 S. Ct. 1431. The question presented was whether a New York Rule, N.Y.C.P.L.R. § 901(b), which prevents parties from bringing class action lawsuits on claims seeking the minimum measure of recovery imposed by statute, was preempted by Fed. R. Civ. P. 23 in diversity cases. Writing for a five member majority, Justice Scalia concluded that, because § 901(b) "attempts to answer the same question" as Rule 23, namely, the categorical question of when a class action may be brought, § 901(b) could not be applied to bar class actions in federal diversity cases, so long as Rule 23 complies with the Rules Enabling Act. Id. at 1437.

Joined only by three other Justices, Justice Scalia went on to reason that Rule 23's validity under the Rules Enabling Act depends entirely on whether it "really regulate[s] procedure," which he concluded it did. Id. at 1442 (plurality opinion) (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)). This conclusion was reached without any inquiry into whether § 901(b) was procedural or substantive, as in his view that question "makes no difference" for Rules Enabling Act purposes. Id. at 1444.

Justice Stevens joined the Court's narrow holding that Rule 23 was sufficiently broad to preempt § 901(b), and that Rule

23 complied with the Rules Enabling Act. Id. at 1448 (Stevens, J., concurring). But in a concurring opinion, joined in relevant part by four other Justices, he held that whether a Federal Rule is valid under the Rules Enabling Act depends not on the Federal Rule alone, but also on the nature of the state rule it seeks to displace. Id. at 1452-53. The critical question is not "whether the state law at issue takes the form of what is traditionally described as substantive or procedural," but rather "whether the state law actually is part of a State's framework of substantive rights or remedies." Id. at 1449. Justice Stevens also noted that this inquiry under the Rules Enabling Act "may well bleed back" into the inquiry of whether a Federal Rule is sufficiently broad to control the issue before the court. Id. at 1452. This is so because a Federal Rule "cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. To avoid such a result, the concurrence concludes, "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." Id.

The Court's fractured holding regarding when a Federal Rule is "sufficiently broad" to control an issue of state law is

given content by other language used by the Court. The concepts of congruence, co-extensiveness, difference, and direct or indirect conflict continue to play a role in the analysis. Shady Grove uses the language of "potential conflict," "compatible" and "collision with state law." Id. at 1440-42 (majority opinion). The plurality also characterizes the first step of the analysis as "determining whether the federal and state rules can be reconciled (because they answer different questions)". Id. at 1445 (plurality opinion); see also id. at 1451 (Stevens, J., concurring) (stating the first step of the analysis asks whether the federal rule leaves "no room for the operation of seemingly conflicting state law."). Our own case law also provides guidance. See Morel v. DaimlerChrysler AG, 565 F.3d 20, 24 (1st Cir. 2009) (asking whether the state rule is "inconsistent"); Gil de Rebollo v. Miami Heat Ass'ns, Inc., 137 F.3d 56, 65 n.5 (1st Cir. 1998) (asking about "potential conflict"). And we give the federal rules a literal reading. See Walker, 556 U.S. at 750 n.9.

We also take some guidance from history. Fed. R. Civ. P. 23.1, which governs shareholder derivative suits, is not so broad as to cover some state bond requirements for such suits. Cohen, 337 U.S. at 555-57. But the class action Rule 23 is broad enough to preclude state prohibitions on certain class actions seeking penalties or statutory minimum damages. Shady Grove, 130 S. Ct. at 1431. It is also commonly accepted that in diversity cases state

-18-

statutes of limitations apply.[13]  Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945).  And Fed. R. Civ. P. 15(c), governing the relation back of complaints, displaces an inconsistent state rule. Morel, 565 F.3d at 24.

Applying these principles to the case before us, we conclude that Fed. R. Civ. P. 12(b)(6),[14] which governs motions to dismiss on the pleadings, and Fed. R. Civ. P. 56, which governs motions for summary judgment, are not so broad as to cover the issues within the scope of Section 556.  To use the language of Shady Grove, Rules 12 and 56 do not "attempt[] to answer the same question," Shady Grove, 130 S. Ct. at 1437, nor do they "address the same subject," id. at 1440, as Section 556.

Federal Rules 12(b)(6) and 56 are addressed to different (but related) subject-matters.  Section 556 on its face is not addressed to either of these procedures, which are general federal procedures governing all categories of cases.  Section 556 is only addressed to special procedures for state claims based on a

---

[13]     As a consequence, state rules that are integral to the state statute of limitations usually apply in federal court; federal rules are not so broad as to cover these state rules.  See 17A J. Moore et al., Moore's Federal Practice § 124.03[2][a] (3d ed. 2009).  For example, Fed. R. Civ. P. 3, which concerns commencing an action in federal court, is not broad enough to control state laws integral to the limitations issue.  See Walker, 446 U.S. at 751-52.

[14]     Our analysis with regard to Rule 12(b)(6) applies with equal force to Rule 12(c), which Godin also asserts preempts Section 556.  See Fed. R. Civ. P. 12(c).

defendant's petitioning activity. In contrast to the state statute in <u>Shady Grove</u>, Section 556 does not seek to displace the Federal Rules or have Rules 12(b)(6) and 56 cease to function. <u>Cf.</u> <u>Morel</u>, 565 F.3d at 24. In addition, Rules 12(b)(6) and 56 do not purport to apply only to suits challenging the defendants' exercise of their constitutional petitioning rights. Maine itself has general procedural rules which are the equivalents of Fed. R. Civ. P. 12(b)(6) and 56. <u>See</u> Me. R. Civ. P. 12; Me. R. Civ. P. 56. That fact further supports the view that Maine has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities.

Rule 12(b)(6) serves to provide a mechanism to test the sufficiency of the complaint. <u>See</u> <u>Iqbal</u> v. <u>Ashcroft</u>, 129 S. Ct. 1937, 1949 (2009). Section 556, by contrast, provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special rules Maine has created to protect such petitioning activity against lawsuits.

The federal summary judgment rule, Rule 56, creates a process for parties to secure judgment before trial on the basis that there are no disputed material issues of fact, and as a matter

-20-

of law, one party is entitled to judgment. Inherent in Rule 56 is that a fact-finder's evaluation of material factual disputes is not required. But Section 556 serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech. When applicable, Section 556 requires a court to consider whether the defendant's conduct had a reasonable basis in fact or law, and whether that conduct caused actual injury. Fed. R. Civ. P. 56 cannot be said to control those issues.

Section 556 has both substantive and procedural aspects. One of the substantive aspects of Section 556 shifts the burden to plaintiff to defeat the special motion. Section 556 also determines the scope of plaintiff's burden, requiring plaintiff to demonstrate that the defendant's activity "(1) was without 'reasonable factual support,' and (2) was without an 'arguable basis in law.'" Schelling, 942 A.2d at 1229 (quoting Me. Rev. Stat. tit. 14, § 556). Further, Section 556 substantively alters the type of harm actionable--that is, plaintiff must show the defendant's conduct "resulted in 'actual injury' to the plaintiff." Id. (quoting Me. Rev. Stat. tit. 14, § 556).[15]

---

[15] In addition, Section 556 allows courts to award attorney's fees and costs to a defendant that successfully brings a special motion to dismiss, a statutory element we have previously determined to be substantive. See Servicios Comerciales Andinos, S.A., 145 F.3d at 478.

Neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. Civ. P. 56 determines which party bears the burden of proof on a state-law created cause of action.  See, e.g., Coll v. PB Diagnostic Syst., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995).  And it is long settled that the allocation of burden of proof is substantive in nature and controlled by state law.  Palmer v. Hoffman, 318 U.S. 109, 117 (1943); Am. Title Ins. Co. v. E. W. Fin. Corp., 959 F.2d 345, 348 (1st Cir. 1992).

Further, Section 556 provides substantive legal defenses to defendants and alters what plaintiffs must prove to prevail.  It is not the province of either Rule 12 or Rule 56 to supply substantive defenses or the elements of plaintiffs' proof to causes of action, either state or federal.[16]

Because Section 556 is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right," it cannot be displaced by Rule 12(b)(6) or Rule 56.  Shady Grove, 130 S. Ct. at 1452 (Stevens, J., concurring).  Further, if Rules 12(b)(6) and 56 were thought to

---

[16]   The similarities between Section 556 and Rules 12 and 56 as mechanisms to efficiently dispose with meritless claims before trial occurs does not resolve the issue.  Such an abstracted framing of the breadth of the Federal Rules is inappropriate. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1441 n.7 (2010) (embracing the suggestion that Federal Rules should be read "to avoid 'substantial variations [in outcomes] between state and federal litigation'") (alteration in original) (quoting Semtek Int'l Inc., v. Lockheed Martin Corp., 531 U.S. 497, 504 (2001)).

preempt application of all of Section 556, a serious question might be raised under the Rules Enabling Act.  Id. In light of our conclusion that Section 556 is not displaced, we need not reach this issue.

Given that neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. Civ. P. 56 is so broad as to encompass the special Section 556 proceedings, we might go no further.  We do acknowledge the district court's concern about some differences in the mechanics, particularly as to the record on which the motion is evaluated. Whether the procedures outlined in Section 556 will in fact depart from those of Rule 12 and Rule 56 will depend on the particulars in a given case of the claim and defense.  Some Section 556 motions, like Rule 12(b)(6) motions,[17] will be resolved on the pleadings. In other cases, Section 556 will permit courts to look beyond the pleadings to affidavits and materials of record, as Rule 56 does. In this way, some Section 556 motions, depending on the particulars of a case, will be resolved just as summary judgment motions under Fed. R. Civ. P. 56 are.

Godin emphasizes that Section 556 has the potential in a particular case to give the individual defendants a dispositive ruling without affording discovery, thus bringing Section 556 in

---

[17]    Even in assessing 12(b)(6) motions, the scope of materials considered depends somewhat on the particular case.  For example, courts can take account of materials outside the pleadings if they are undisputed matters of public record.  See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 19 (1st Cir. 2003).

conflict with Fed. R. Civ. P. 56.  Cf. Metabolife, 264 F.3d at 845-47.  Godin has not shown any actual conflict.  While Section 556 provides that discovery proceedings are stayed upon the filing of a special motion to dismiss, the statute also provides that a court may, upon good cause shown, order that specific discovery be conducted.  Me. Rev. Stat. tit. 14, § 556.  The Maine statute, in imposing on the opponent of the motion the burden of justifying discovery, is consistent with the allocation of burdens under Rule 56(d), formerly Rule 56(f).[18]  If a federal court would allow discovery under Fed. R. Civ. P. 56(d) then, in our view, that would constitute good cause under the Maine statute.

The limiting effect that Section 556 has on discovery is not materially different from the effect of Rule 12 proceedings and, in some instances, Rule 56 proceedings.  Neither Rule 12 nor Rule 56 of the federal rules of procedure purport to be so broad as to preclude additional mechanisms meant to curtail rights-dampening litigation through the modification of pleading standards.  The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, is a federal version of such an additional mechanism to the Federal Rules, meant to apply to a discrete category of cases.  "Designed to curb perceived abuses of

---

[18]   Fed. R. Civ. P. 56 was amended, effective December 1, 2010.  The substance of the rule has not materially changed.  We find it just and practicable to cite the new rule.  See Silva v. Witschen, 19 F.3d 725, 727-29 (1st Cir. 1994); Freund v. Fleetwood Enters., Inc., 956 F.2d 354, 363 (1st Cir. 1992).

-24-

the § 10(b) private action," the PSLRA created a higher standard for pleading scienter in any § 10(b) claim.[19] Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 320, 321 (2007). We recognize that the fact that Congress may create special procedures in addition to those under the Federal Rules does not itself mean that the Federal Rules would not displace a similar state-law special procedure. See Shady Grove, 130 S. Ct. at 1438. Still, the existence of the PSLRA provides some support to our conclusion that Congress, in approving Rules 12 and 56, did not intend to preclude special rules designed to make it more difficult to bring certain types of actions where state law defines the cause of action.

In sum, "there is no indication that Rules . . . 12 and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." Newsham, 190 F.3d at 972; see also Henry, 566 F.3d at 169-70 (enforcing Louisiana's anti-SLAPP statute in federal court). Rather, Rules 12 and 56 "can exist side by side" with Section 556, "each controlling its own intended sphere of coverage without conflict." Newsham,

---

[19]    "Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading' . . . and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" Tellabs, Inc., 551 U.S. at 321 (citing 15 U.S.C. § 78u-4(b)).

190 F.3d at 972 (quoting Walker, 446 U.S. at 752) (internal quotation marks omitted).

B.      Declining to Apply Section 556 in Federal Court Would Disserve the Dual Aims of Erie

Here, application of Section 556 would best serve the "'twin aims of the Erie rule: discouragement of forum shopping and inequitable administration of the laws.'" Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 773 (quoting Stewart, 487 U.S. at 27 n.6 (1988)). "If application of federal law would disserve these two policies, state law applies." Id.

Plainly, Section 556 substantively alters Maine-law claims that are based on a defendant's protected petitioning activity by shifting the burden to the plaintiff and altering the showing the plaintiff must make. Me. Rev. Stat. tit. 14, § 556. Section 556 also allows courts to award attorney's fees to prevailing defendants, and alters the traditional common-law rule that, in libel cases, a plaintiff need not demonstrate specific damages to recover on a claim, as alleging "damages per se" does not satisfy Section 556's actual injury standard. See Schelling, 942 A.2d at 1232 (citing Restatement (Second) of Torts § 569, cmt. b (1977)).

Declining to apply Section 556 in federal court would thus result in an inequitable administration of justice between a defense asserted in state court and the same defense asserted in federal court. See Commercial Union Ins. Co., 41 F.3d at 773.

-26-

Likewise, were Section 556 not to apply in federal court, the incentives for forum shopping would be strong: electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to avoid Section 556's burden-shifting framework, rely upon the common law's per se damages rule, and circumvent any liability for a defendant's attorney's fees or costs.

IV.

Because neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. Civ. P. 56 is sufficiently broad to control the issues raised by the individual defendants' Section 556 special motion, we conclude the district court erred in denying the motion on the basis that Section 556 was displaced. Holding to the contrary would deprive the individual defendants of Section 556 protection solely on account of the fact that they are joined as defendants in this litigation with Machiasport and the Union, against whom federal claims are raised. Such an outcome would directly contravene Erie's aims.

We reverse the district court's order, and remand so that the district court may consider the merits of the individual defendants' special motion to dismiss under Section 556 in the first instance. No costs are awarded