Chief Judge KOZINSKI,
with whom Judge PAEZ joins, concurring:
I join Judge Wardlaw’s fíne opinion because it, faithfully applies .our law, as announced in United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir.1999), and its progeny. But I believe Newsham is wrong and should be reconsidered.
Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), divided the law applicable to diversity cases into two broad categories. Overruling Swift v. Tyson, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865 (1842), it held that state law, rather than federal common law, applies to matters of substance. Erie, 304 U.S. at 78-79, 58 S.Ct. 817. But when it comes to procedure, federal law governs. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 & n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); see also Hanna v. Plumer, 380 U.S. 460, 473, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (“Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts.... ”).
In most cases, it’s easy enough to tell whether a rule is substantive or procedural. Whether a defendant is liable in tort for a slip-and-fall, or has a Statute of Frauds defense to a contract claim, is controlled by state law. Just as clearly, the time to answer a complaint, the manner in which process is served, the methods and time limits for discovery, and whether the jury must be unanimous are controlled by the Federal Rules of Civil Procedure. The latter is true, even though such procedural rules can affect outcomes and, hence, substantive rights. See Hanna, 380 U.S. at 471, 85 S.Ct. 1136.
But the distinction between substance and procedure is not always clear-cut. While many rules are easily recognized as falling on one side or the other of the substance/procedure line, there are some close cases that call for a more nuanced analysis. See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010); Gasperini, 518 U.S. at 428, 116 S.Ct. 2211. In Walker v. Armco Steel Corp., 446 U.S. 740, 750-51, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), for example, the Supreme Court considered the interplay between Federal Rule of Civil Procedure 3 and Oklahoma’s statute of limitations. Rule 3 provided then, as it does now, that a civil action is commenced on the date the complaint is filed. Id. at 750, 100 S.Ct. 1978. In Walker, that date was within the state statute of limitations period. Id. at 742, 100 S.Ct. 1978. Oklahoma law, however, provided that a civil action began, for statute of limitations purposes, only when the summons was served on the defendant. Id. at 742-43, 100 S.Ct. 1978. If plaintiff filed the complaint at the end of the limitation period, service would still be timely, so long as it occurred no more than sixty days after the filing of the complaint. Id. at 743,100 S.Ct. 1978.
Confronted with a state substantive rule (the statute of limitations) and a federal procedural rule fixing the date when a civil action commences, the Court held that there was no conflict because the two rules dealt with different questions. Id. at 750-51, 100 S.Ct. 1978. The federal rule, the Court noted, set the date for the commencement of the action for the purpose of measuring various time periods internal to the lawsuit. Id. at 751, 100 S.Ct. 1978. The rule wasn’t meant to affect the time when the statute of limitations was tolled *273 by commencement of the lawsuit. Id. at 751-53, 100 S.Ct. 1978. The latter was a matter of state substantive law. Because the federal procedural rule and the state substantive rule could coexist peaceably within their respective spheres, the Court concluded that each could be given full effect: The state rule would perform the backwards-looking function of determining whether the action was brought within the statute of limitations, whereas the federal rule would determine when the action began for the forward-looking purpose of measuring time periods applicable to the litigation. Id. at 750-53, 100 S.Ct. 1978.
Significantly, Walker considered whether there was a conflict between the state and federal rules only after it determined that the state rule was substantive, because it defined the period that a right created by state law could be enforced. See id. at 746, 749-50, 100 S.Ct. 1978. At the same time, a broad reading of the federal procedural rule could impinge on the substantive state law right by extending the statute of limitations. This would have led to the “ ‘inequitable- administration’ of the law” by giving these plaintiffs greater rights than they would have enjoyed in state court, “solely because of the fortuity that there is diversity of citizenship between the litigants.” Id. at 753,100 S.Ct. 1978 (quoting Hanna, 380 U.S. at 468, 85 S.Ct. 1136).
Most of Newsham’s analysis was devoted to showing that there’s no “conflict” between California’s anti-SLAPP statute and the Federal Rules of Civil Procedure and, therefore, the two regimes can operate side-by-side in the same lawsuit. But the question of a conflict only arises if the state rule is substantive; state procedural rules have no application in federal court, no matter how little they interfere with the Federal Rules. Newshdm’s mistake was that it engaged in conflict analysis without first determining whether the state rule is, in fact, substantive.
It’s not. The anti-SLAPP statute creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights. The language of the statute is procedural: Its mainspring is a “special motion to, strike”; it contains provisions limiting discovery; it provides for sanctions for parties who bring a non-meritorious suit or motion; the court’s ruling on the potential success of plaintiffs claim is not “admissible in evidence at any later stage of the case”; and an order granting or denying the special motion is immediately appealable. See Cal.Civ.Proc. Code §'425.16. The statute deals only with the conduct of the lawsuit; it creates no rights independent of existing litigation; and its only purpose is the swift termination of certain lawsuits the legislators believed to be unduly burdensome. It is codified in the state code of civil procedure and the California Supreme Court has characterized it as a “procedural device to screen out meritless claims.” See Kibler v. N. Inyo Cnty. Local Hosp. Dist., 39 Cal.4th 192, 46 Cal.Rptr.3d 41, 138 P.3d 193, 198 (2006).
Federal courts must ignore state rules of procedure because it is Congress that has plenary authority over the procedures employed in federal court, and this power cannot be trenched upon by the states. See Erie, 304 U.S. at 78, 58 S.Ct. 817 (“[T]he law to be applied in any [diversity] case is the law of the State” except for “matters governed by the Federal Constitution or acts of Congress----” (emphasis added)); see also 28 U.S.C. § 2072. To me, this is the beginning and the end of the analysis. Having determined that.the state rule is quintessentially procedural,, I would conclude it has no application in federal court.
*274 But Newsham is wrong even on its own terms. Newsham recognized a “commonality of purpose” between the state law and Federal Rules of Civil Procedure 8, 12 and 56, but shrugged it off because the parties could take advantage of both the Federal Rules and the very similar anti-SLAPP procedures. See 190 F.3d at 972-73. This vastly understates the disruption when federal courts apply the California anti-SLAPP statute.
The Federal Rules aren’t just a series of disconnected procedural devices. Rather, the Rules provide an integrated program of pre-trial, trial and post-trial procedures designed to ensure “the just, speedy, and inexpensive determination of every action and proceeding.” See Fed.R.Civ.P. 1. Pre-discovery motions, discovery, summary adjudication and trial follow a logical order and pace so that cases proceed smartly towards final judgment or settlement.
The California anti-SLAPP statute cuts an ugly gash through this orderly process. Designed to extricate certain defendants from the spiderweb of litigation, it enables them to test 'the factual sufficiency of a plaintiffs case prior to any discovery; it changes the standard for surviving summary judgment by requiring a plaintiff to show a “reasonable probability” that he will prevail, rather than merely a triable issue of fact; it authorizes attorneys’ fees against a plaintiff who loses the special motion by a standard far different from that applicable under Federal Rule of Civil Procedure 11; and it gives a defendant who loses the motion to strike the right to an interlocutory appeal, in clear contravention of Supreme Court admonitions that such appeals are to be entertained only very sparingly because they are so disruptive of the litigation process. E.g., Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 130 S.Ct. 599, 605, 175 L.Ed.2d 458 (2009).
We’ve already recognized that key aspects of this scheme can’t possibly coexist with the Federal Rules of Civil Procedure. The Federal Rules contemplate that the sufficiency of a plaintiffs case will be tested prior to discovery only for legal sufficiency. See Fed.R.Civ.P. 12. If a plaintiffs case vaults that hurdle, the Federal Rules provide for a period for discovery before defendant can test plaintiffs case for factual sufficiency. See Fed.R.Civ.P. 26, 29-37, 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Federal Rules don’t contemplate that a defendant may get a case dismissed for factual insufficiency while concealing evidence that supports plaintiffs case. See 10B Charles Alan Wright, Arthur R. Miller et ah, Federal Practice & Procedure § 2740 (3d ed. 2012); see also Fed.R.Civ.P. 56(d). The California anti-SLAPP statute allows for precisely that.
That’s why we held in Metabolife International, Inc. v. Wornick, 264 F.3d 832, 845 (9th Cir.2001), that the “discovery-limiting aspects” of the anti-SLAPP statute don’t apply in federal court. See also Cal.Civ.Proc.Code § 425.16(f)-(g). The Federal Rules, after all, reflect a policy of forcing a defendant to disclose adverse facts before he may challenge plaintiffs case for factual sufficiency. See John H. Beisner, Discovering ,a Better Way: The Need for Effective Civil Litigation Reform, 60 Duke L.J. 547, 554-59 (2010).
In reaching this clearly correct conclusion, Metabolife decimated the state scheme. The anti-SLAPP statute is designed, first and foremost, to reduce the time and expense certain defendants spend in court upon being sued. See Wilcox v. Superior Court, 27 Cal.App.4th 809, 823, *275 83 Cal.Rptr.2d 446 (1994), disapproved of on other grounds by Equilon Enters, v. Consumer Cause, Inc., 29 Cal.4th 53, 124 Cal.Rptr.2d 507, 52 P.3d 685, 694 n. 5 (2002). It accomplishes this by requiring plaintiff to show that there’s a “reasonable probability” he’ll prevail on his claim before subjecting the defendant to the cost, delay and vexation of discovery. See Metabolife, 264 F.3d at 840. Metabolife crippled the anti-SLAPP statute by forcing defendants sued in federal court to suffer the slings and arrows of outrageous discovery, pushing back by months or years the time when they can free themselves from litigation. And, of course, giving a plaintiff discovery makes it much more likely that he’ll meet the “reasonable probability” of success standard than his counterpart in state court, who must make that showing without first examining defendant’s records or deposing defendant’s witnesses.
After Metabolife, the federal court special motion is a far different (and tamer) animal than its state-court cousin. Meta-bolife diminished some of the tension between the state and federal schemes, but at the expense of depriving the state scheme of its key feature: giving defendants a quick and painless exit from the litigation. What we’re left with after Me-tabolife is a hybrid procedure where neither the Federal Rules nor the state anti-SLAPP statute operate as designed.
From the federal perspective, Metabol-ife left in place quite a bit of disruption: the burden on the plaintiffs, to show that they have not merely a triable issue of fact, but a reasonable probability of success; enhanced sanctions for bringing a weak claim; and the cost, disruption and delay inherent in a right to interlocutory appeal — created by state law, rather than by Congress. I find it passing strange that state legislatures have now displaced Congress as the delimiters of our jurisdiction. See Batzel v. Smith, 333 F.3d 1018, 1024-26 (9th Cir.2003) (we must allow, immediate appeal because of text and legislative history of California’s anti-SLAPP statute).
Newsham was a big mistake. Two other circuits have foolishly followed it. See Godin v. Schencks, 629 F.3d 79, 81, 85-91 (1st Cir.2010); Henry v. Lake Charles Am. Press, L.L.C., 566 F.3d 164, 168-69 (5th Cir.2009). I’ve read their opinions ' and find them no more persuasive than News-ham itself. It’s time we led the way back out of the wilderness. Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof. As a three judge panel, Metabolife could only do so much, and we are generally bound to. follow Newsham. But if this or another.case were taken en banc, we could take a fresh look at . the question. I believe we should.